OPINION OF THE COURT
Hancock, Jr., J.
This appeal presents questions concerning the validity and application of article 65 of the Criminal Procedure Law which authorizes a trial court, under specified circumstances, in certain sex crime cases, to permit a child witness to testify from a testimonial room over live two-way closed-circuit television. Defendant was convicted, after a jury trial, of at *253 tempted rape, first degree, attempted sodomy, first degree, and sexual abuse, first degree, based upon acts involving a four-year-old girl. During the trial, the court made an order pursuant to article 65 permitting the victim’s testimony to be transmitted from a testimonial room via two-way television into the courtroom where the defendant had been directed to remain with the Judge and jury. The order was based upon the finding that the victim was a vulnerable child witness who should be permitted to give her testimony in a place removed from the courtroom and outside the presence of the Judge, the jury and the defendant.
Defendant’s contentions on appeal require us to address two main issues:
(1) Whether article 65 is unconstitutional on its face because, regardless of how the statute is construed or applied, it permits a witness to testify from a place other than the courtroom and, under certain circumstances, out of the presence of defendant, thus avoiding face-to-face confrontation with the jury and with the accused in violation of a criminal defendant’s State and Federal confrontation rights; or whether article 65 may be construed so that it affords the minimum protections for a criminal defendant’s confrontation rights required by the State and Federal Constitutions; and
(2) Whether, if article 65 may be construed so as to avoid facial unconstitutionality, the requirements for a determination of vulnerability under the statute, as we construe it, were satisfied in this case.
 For reasons hereinafter stated, we conclude that article 65 can properly be construed so that it withstands defendant’s facial constitutional attack. We hold, however, that the requisite showing for the order here was not made. Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
I
Article 65
Article 65 of the Criminal Procedure Law, enacted by the Legislature in 1985 for an experimental period of three years (L 1985, ch 505, § l),[1] authorizes, in limited circumstances, the *254 use of live two-way closed-circuit television[2] as a method of permitting certain child witnesses[3] to give testimony in sex crime cases from a testimonial room — a room which is separate and apart from the courtroom (CPL 65.00 [3]). The legislative purpose for permitting such televised testimony is the avoidance of the severe mental or emotional harm that may result from requiring a child witness to testify in the public atmosphere of the courtroom concerning the intimate sexual details of the crime. Article 65 is designed to further the aim of insulating child witnesses from the trauma of testifying in open court and also, under certain conditions, from having to testify in the presence of the defendant while, at the same time, fully preserving the defendant’s constitutional rights (see, Mem of Dept of Law, Bill Jacket, L 1985, ch 505, at 34-38; Preiser, 1985 Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 65.00, 1990 Supp Pamph, at 485-486).
Before any of the televised testimony procedures authorized under article 65 may be invoked, the court must declare the child to be a vulnerable witness (CPL 65.20 [1], [10]). Such a declaration of vulnerability requires that "the court, in accordance with the provisions of section 65.20, determine[ ] by clear and convincing evidence that it is likely, as a result of extraordinary circumstances, that such child witness will suffer severe mental or emotional harm if required to testify at a criminal proceeding without the use of live, two-way closed-circuit television and that the use of such * * * [television procedure] will help prevent, or diminish the likelihood or extent of, such harm”[4] (CPL 65.10 [1] [emphasis added]).
The required showing of likelihood of severe mental or emotional harm, it should be noted, must be the "result of extraordinary circumstances” (CPL 65.10 [1] [emphasis added]). CPL 65.20 contains a list of 12 factors, which, if estab *255 lished by clear and convincing evidence, the court "may consider, in determining whether there are such extraordinary circumstances” (CPL 65.20 [9]). These factors include (1) "the manner of the commission of the offense of which the defendant is accused was particularly heinous or was characterized by aggravating circumstances” and (2) "[t]he child witness is particularly young” (CPL 65.20 [9] [a], [b]).
The court may grant the application for the use of the television procedure, if it "is satisfied that the child witness is vulnerable and that, under the facts and circumstances of the particular case, the defendant’s constitutional rights to an impartial jury or of confrontation will not be impaired” (CPL 65.20 [11]).
A determination of vulnerability does not, standing alone, permit the child witness to give televised testimony from the testimonial room in the absence of the defendant. That requires an additional, specific finding "that placing the defendant and the child witness in the same room during the testimony of the child witness will contribute to the likelihood that the child witness will suffer severe mental or emotional harm” (CPL 65.20 [12]). If the court makes such a finding, it shall direct that the defendant will remain in the courtroom during the witness’s testimony (CPL 65.20 [12]).
Article 65 contains two procedures for obtaining the declaration of vulnerability necessary for permitting the use of televised testimony: (1) CPL 65.20 (1) under which a formal motion is made prior to trial and (2) CPL 65.20 (10) under which, during trial, irrespective of whether a formal pretrial motion has been made, the court, at the request of either party or on its own motion, may declare the witness to be. vulnerable. If the application is made by formal motion pursuant to CPL 65.20 (1), the court, unless the material facts are conceded, is required to hold a hearing in accordance with CPL 65.20 (5). There is no such specific requirement for a hearing if the application is made during trial under CPL 65.20 (10). Additionally, if the application is made during trial, the statute provides that the court may make a determination "from its own observations” that a witness is suffering severe mental or emotional harm (CPL 65.20 [10]; but see, n 4, supra, at 254).
II
The Court’s Order Under Article 65
In this case, the court made an order which permitted the *256 victim, Jennifer, then five years old, to testify over live closed-circuit, two-way television from the testimonial room and also directed that defendant remain in the courtroom during her testimony (see, CPL 65.20 [12]). Because the District Attorney had proceeded to trial without making a pretrial motion, the order was made during trial pursuant to an application under CPL 65.20 (10).
Prior to making the application, the District Attorney had called Jennifer to testify as an unsworn in-court witness. A hearing was held in defendant’s presence to determine whether Jennifer had the testimonial capacity to give evidence. It is not disputed that Jennifer was reluctant to testify at this hearing or that, while generally responsive to questions posed to her, she gave no verbal responses, but communicated only by shaking her head. After this hearing, the court determined Jennifer could testify as an unsworn witness and the jury was returned to the courtroom. Jennifer was called as a witness, but, when she looked in defendant’s direction, she was extremely reluctant to take the stand.
Without objection, the court directed that defendant be removed from the courtroom so that it could observe Jennifer outside defendant’s presence. The jury was excused. Again, Jennifer was generally responsive to questions, but she did not verbalize her answers. Defendant and the jury were brought back into the courtroom and Jennifer began to testify as an unsworn witness. The record contains indications that during this time Jennifer was fearful of defendant. For example, when the District Attorney stood in a position where Jennifer’s view of defendant was blocked, she became more communicative, an observation that the Trial Judge noted on the record. Additionally, when asked if she was afraid of defendant, she nodded affirmatively. After Jennifer had been on the stand for approximately two hours, the District Attorney began questioning Jennifer about the details of the incident. She did not respond to these questions and remained unresponsive when asked to demonstrate what occurred using anatomically correct dolls.
Given the late hour, the court excused the jury for the day and the District Attorney moved, pursuant to CPL 65.20 (10), to have the court declare that Jennifer was a vulnerable child witness and that CPL article 65 procedures be utilized. The court granted this application based upon its "close” observa *257 tion of the child during her two hours on the stand and directed that she be permitted to testify outside defendant’s presence over closed-circuit television (CPL 65.20 [10], [12]). It concluded that Jennifer was suffering from "severe mental or emotional harm resulting from the incident that has occurred” and as a result could not "verbalize or otherwise communicate except with the shake of the head”. The court also noted that defendant’s presence was "creating an extremely and severely stressful situation”. In excepting to this ruling, defense counsel contended that the Judge’s observations were "a bit of overstatement”, tailored to fit CPL 65.20 (10), and that the court should not make a finding of vulnerability solely "by virtue of certain [of the child’s] body movements”.
Ill
Facial Challenge
As set forth herein, we hold that article 65 is constitutional on its face, but only when the presumption of constitutionality is applied and CPL 65.20 (10) is read as embodying the additional requirements of CPL 65.10 (1).
A
In analyzing the facial constitutionality of article 65, we first discuss defendant’s primary contention, based on the United States Supreme Court’s decision in Coy v Iowa (487 US 1012), that a defendant’s constitutional right of confrontation (see, US Const 6th, 14th Amends; NY Const, art I, § 6) permits nothing less than total eye-to-eye confrontation in defendant’s physical presence. Defendant’s argument, under his reading of Coy, is that article 65, in permitting a witness to give televised testimony in defendant’s absence, necessarily violates the constitutional right of confrontation, irrespective of the limitations on the permissible use of the procedures and the statutory provisions designed to minimize the extent of the infringement. We do not interpret Coy as establishing such a categorical rule and decline to adopt one under the State Constitution.
In Coy, the Supreme Court held that a defendant’s constitutional confrontation rights were violated when two 13-year-old sexual abuse victims were allowed to testify pursuant to an Iowa statute permitting use of a one-way screen shielding the *258 defendant from the witnesses’ view. Justice Scalia, writing for the court, stated that the right of confrontation ordinarily requires a "face-to-face” encounter between accuser and accused (487 US, at 1019-1020). The Scalia opinion left for "another day” the question of whether there are "any exceptions” to the absolute face-to-face confrontation standard, but expressly noted that if there are exceptions, they would require more than "a legislatively imposed presumption of trauma” (id., at 1021).
Justice O’Connor, in a concurring opinion joined by Justice White, reasoned that face-to-face confrontation rights are "not absolute but rather may give way in an appropriate case to other competing interests so as to permit the use of certain procedural devices designed to shield a child witness from the trauma of courtroom testimony” (id., at 1022). Citing New York’s article 65, Justice O’Connor suggested that "if a court makes a case-specific finding of necessity * * * the strictures of the Confrontation Clause may give way to the compelling state interest of protecting child witnesses” (id., at 1025; see also, Globe Newspaper Co. v Superior Ct, 457 US 596, 607; Chambers v Mississippi, 410 US 284, 295; Mattox v United States, 156 US 237). Indeed, Justice Blackmun, joined by Chief Justice Rehnquist, dissented in Coy, concluding that the "limited departure in this case from the type of 'confrontation’ that would normally be afforded at a criminal trial” was proper in light of the "sufficiently significant state interest” involved (487 US, at 1031).
Reading the opinions of Justices Scalia, O’Connor and Blackmun together, we interpret the holding in Coy, as have the multitude of State courts which have considered it, as permitting the use of closed-circuit television technology where: (1) an appropriate individualized showing of necessity is made and (2) the infringement on defendant’s confrontation rights is kept to a minimum (see e.g., State v Taylor, 562 A2d 445 [RI 1989]; State v Jarzbek, 204 Conn 683, 529 A2d 1245, 1254 [1988], cert denied 484 US 1061, appeal after remand 210 Conn 396, 554 A2d 1094 [1989]; Glendening v State, 536 So 2d 212, 217-218 [Fla 1989]; State v Tafoya, 108 NM 1, 765 P2d 1183 [1988], cert denied 107 NM 785, 765 P2d 758; State v Vincent, 159 Ariz 418, 768 P2d 150, 162-163 [1989]; State v Eaton, 244 Kan 370, 769 P2d 1157 [1989]; Brady v State, 540 NE2d 59, 65 [Ind App 3d Dist 1989]; see also, Wildermuth v State, 310 *259 Md 496, 530 A2d 275, 286-287 [1987]).[5] This reading of Coy, which recognizes that, with appropriate safeguards, a defendant’s rights of confrontation "must occasionally give way to considerations of public policy and the necessities of the case” (Mattox v United States, 156 US, at 243, supra), we believe, results in a rule that strikes a proper balance between the Stale’s manifest interest in protecting the child witness in child sexual abuse prosecutions (see, People v Groff, 71 NY2d 101, 108-109; Globe Newspaper Co. v Superior Ct., 457 US 596, 607, supra; Chambers v Mississippi, 410 US 284, 295, supra) and the defendant’s right to confront adverse witnesses (see, People v Arroyo, 54 NY2d 567, 570-571, 574-575, cert denied 456 US 979; Douglas v Alabama, 380 US 415, 418; Ohio v Roberts, 448 US 56, 63-64). We conclude, therefore, that face-to-face confrontation with the defendant is not an absolute requirement under either the Federal or State Constitution.
Nor do we find article 65 facially invalid because it permits the child witness to testify from a place removed from the courtroom and thereby avoid face-to-face confrontation with the jury. We see no more reason for holding that this jury confrontation right is absolute than for doing so with respect to the witness-defendant confrontation right involved in Coy — the right which Justice Scalia in his opinion identified as the "core” right (487 US, at 1017). As with the witness-defendant confrontation right, a statute which tolerates some infringement of the witness-jury confrontation right can meet constitutional requirements provided it contains sufficient limitations and safeguards (see, Ohio v Roberts, 448 US 56, 64, 65, supra; Mattox v United States, 156 US 237, 242-243, supra; Preiser, 1985 Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 65.30, 1990 Supp Pamph, at 494-495).
B
Assuming that some infringement of a defendant’s confron *260 tation rights is permissible, the question becomes whether article 65 provides sufficient limitations and protections to meet the minimum requirements of the State and Federal Constitutions and thereby withstand the facial attack. It is iy± addressing this issue that the presumption favoring constitutionality becomes critical. It is, of course, settled that before a court strikes a statute as invalid, it must first ascertain whether a constitutional construction of the statute can "fairly be held to have been within the contemplation ¡of the Legislature” (see, People v Bell, 306 NY 110, 114; People v Barber, 289 NY 378, 385; McKinney’s Cons Laws of NY, Book 1, Statutes, § 150 [b], [c]).
In considering the facial constitutionality of this statute,,) there is another point which must be kept in mind. The Legislature drafted article 65 with full recognition of the necessity of safeguarding a defendant’s confrontation rights and with the explicit aim of providing sufficient limitations and protections to meet the constitutional requirements (see, Mem of Dept of Law and numerous other memoranda in support, Bill Jacket, L 1985, ch 505). Unlike the Iowa statute at issue in Coy, which permitted the use of a one-way screen, the Legislature in drafting article 65 provided for a two-way simulcast of the child witness’s testimony so that the curtailment of defendant’s confrontation rights would be minimized. Moreover, unlike the Iowa statute, article 65 was drawn to require an individualized showing of necessity for use of the procedures based on clear and convincing evidence. We conclude the Legislature’s efforts to draft a statute to meet the constitutional requirements were successful.
We first discuss the physical arrangements prescribed by the statute. Although two-way live television testimony of a witness from outside the courtroom is obviously not the same as in-court testimony, many of the significant attributes of in-court face-to-face testimony are preserved under the format established by the statute. The image and voice of the vulnerable child witness are transmitted live over closed-circuit television. The equipment used for transmitting the testimony must enable the Judge, the jury and the defendant (assuming that the court has directed that the defendant remain in the courtroom [CPL 65.20 (12)]) to see and hear the witness and evaluate the witness’s demeanor, facial expressions, voice and mode of speaking while the testimony is being given (CPL 65.30 [1]) and the trial court must be convinced that these statutory standards have been met. A defendant may, of *261 course, challenge the sufficiency of the People’s showing that the closed-circuit television arrangements satisfy the statute (CPL 65.30 [1]; cf., Commonwealth v Bergstrom, 402 Mass 534, 524 NE2d 366).[6]
When an order permitting testimony pursuant to article 65 has been made, the image of the jury and the defendant is transmitted simultaneously to the vulnerable child witness in the testimonial room (CPL 65.30 [3]). The defendant and his attorney will be permitted in the testimonial room with the child witness, unless the court makes the finding specified in CPL 65.20 (12), that placing the defendant and the child witness in the same room during the child’s testimony will contribute to the likelihood that the child witness will suffer severe mental or emotional harm. If such a finding is made, the defendant remains in the courtroom during the testimony of the child witness. In such event, as an additional protection for defendant’s rights, the statute directs that defendant’s counsel must remain in the courtroom unless the court is satisfied that counsel’s presence in the testimonial room will not encourage the jury to draw any adverse inference or impede the defendant’s ability to communicate freely with his attorney (see, CPL 65.30 [5]).
Under the arrangements prescribed by the statute, cross-examination of the witness may be conducted to the same extent as if the testimony were given in open court. The scheme permits the Trial Judge, who is in full visual and auditory contact with the witness and the attorneys in the testimonial room, to rule on objections as they are made.
We also believe that the standards for an individualized showing of necessity are sufficiently stringent to meet the facial attack on article 65. When the determination of vulnerability is sought on a motion made before trial, the require *262 ments for a showing of necessity for the determination of vulnerability contained in CPL 65.10 (1) are clearly adequate on their face to satisfy constitutional mandates. To declare a child witness vulnerable, the statute commands that the court find that the witness will likely suffer severe mental or emotional harm if required to testify without the use of live two-way closed-circuit television. The finding must be made on clear and convincing evidence. And the likelihood of severe mental or emotional harm must be as a result of extraordinary circumstances (see, CPL 65.10; Preiser, 1985 Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 65.10, 1990 Supp Pamph, at 487). Also, in deciding such a motion, the court is expressly required to set forth the causal relationship between any one or more of the factors which constitute extraordinary circumstances (CPL 65.20 [9]) and the finding that the child witness is vulnerable (CPL 65.20 [11]). Finally, before granting an order for use of article 65, the court must be satisfied that the defendant’s constitutional rights to an impartial jury and to confrontation will not be impaired (CPL 65.20 [11]).
It is when the request for an order to use the article 65 television procedures is made during the course of a trial that the more serious constitutional questions arise. As noted, CPL 65.20 (10), if read literally, appears to authorize a court to make a determination of vulnerability during the trial solely from its "own observations”. To avoid the constitutional infirmity that such a literal construction of CPL 65.20 (10) would produce,[7] that section can and should be construed as requiring the same findings by clear and convincing evidence (see, CPL 65.10 [1]) as are required for a determination of vulnerability made pursuant to a pretrial motion under CPL 65.20 (l)[8] *263 (see, People u Bell, supra; People v Barber, supra; McKinney’s Statutes § 150 [a]). Consonant with the Legislature’s intent to protect the important constitutional rights of a defendant to confront adverse witnesses, we interpret CPL 65.20 (10) as requiring that the determination be based on something more than the disputed subjective impressions of the Trial Judge, no matter how sincere. There must be sufficient record evidence for a reviewing court to determine that the evidence was clear and convincing. This construction — requiring legal proof on the record of the fact in issue — gives effect to the Legislature’s intent to protect the important constitutional confrontation rights of a defendant.
In view of the special procedural protections, including the provisions ensuring the jury’s ability to observe the witness and the strict requirements for an individualized showing of necessity, we are satisfied that article 65 conforms with "the strictures of the Confrontation Clause”, in permitting "in an appropriate case * * * the use of certain procedural devices designed to shield a child witness from the trauma of courtroom testimony” (Coy v Iowa, 487 US, at 1022, supra [concurring opn by O’Connor, J.]). We conclude that the statute on its face does not offend the defendant’s rights under the State or Federal Constitution to have the witness confront the jury or the defendant.

W

Compliance with Article 65 Requirements
In addressing compliance with article 65, we stress that CPL 65.10 (1) and its procedural requirements, as construed herein (supra, at 262-263), apply to all determinations of vulnerability under CPL 65.20. A determination of vulnerability, either under CPL 65.20 (1) or 65.20 (10), must be supported "by clear and convincing evidence” and the "severe mental or emotional *264 harm” must be the "result of extraordinary circumstances” (CPL 65.10 [1]). A review of the record on which the trial court based its determination of vulnerability in this case compels us to conclude that the requirements of the statute were not satisfied. The court reached its finding that Jennifer was a vulnerable witness solely on its observations of her over the two-hour period during which she was in the courtroom. No other evidence relating to Jennifer’s mental or emotional response to the alleged incident had been adduced.
The determination was made after a lengthy colloquy with counsel, despite defendant’s strenuous objections that the court’s subjective perceptions regarding Jennifer’s reactions did not provide a sufficient basis for the article 65 order. Notwithstanding these objections, the court conducted no hearing where Jennifer’s mother, other family members, the child psychotherapist who had examined Jennifer before trial or other witnesses might have testified to provide evidence in support of a finding that severe mental or emotional harm was likely (cf., People v Algarin, 129 Misc 2d 1016 [testimony at CPL 65.20 (1) hearing of child victim’s mother and statements of the prosecutor concerning child’s out-of-court behavior; additionally child victim expressed "terror” of defendant, left the courtroom crying hysterically and hysteria continued for a time thereafter]; State v Taylor, 562 A2d 445 [RI], supra [testimony of child’s mother that child had nightmares and decreased appetite and had been taunted by her schoolmates and expert testimony of child’s trauma; additionally child victim unable to testify on stand]; State v Tafoya, 108 NM 1, 765 P2d 1183, supra [full day of uncontroverted expert testimony of child’s trauma]; Glendening v State, 536 So 2d 212 [Fla], supra [testimony by the child’s mother, the child’s guardian ad litem, the social worker who was trained in dealing with sexually abused children and the child’s pediatrician]).[9]
*265 To be sure, the statute does not specify that a hearing is required for determinations of vulnerability made under CPL 65.20 (10). Nor does it require that expert testimony be presented. But given the high threshold established by the statute for the protection of a defendant’s confrontational rights, an article 65 order will ordinarily require testimony in a hearing on which the court could base its finding of a likelihood of severe mental and emotional harm and a reviewing court could determine from the record whether the requisite clear and convincing evidence was presented (CPL 65.10 [1]). This is not to say that the trial court here erred in considering its own assessment of Jennifer’s actions and demeanor while she was testifying. Indeed, CPL 65.20 (10) expressly provides that a court may rely on "its own observations” in making a vulnerability determination; and a court, whether the application for an article 65 order is made before trial, pursuant to CPL 65.20 (1), or during trial, pursuant to CPL 65.20 (10), should certainly not disregard its own evaluations of the witness’s mental and emotional condition based on its impressions.
We do conclude, however, that the court’s subjective impressions, in this case, provide an insufficient basis for a factual finding required to be predicated on "clear and convincing evidence”.[10] There was no legal proof in the record — i.e., some sworn testimony, real evidence or the like — from which an appeals court could determine whether the disputed finding of "severe mental or emotional harm” was supported by "clear and convincing evidence” (compare, cases cited, supra, at 264, 265).
Moreover, the substantive requirements of the statute — i.e., what must be found for a determination of vulnerability— were not met. The requirements under article 65 are not satisfied by findings which relate merely to the ease with which the child victim is able to testify or to the usefulness or effectiveness of the testimony the victim is able to give. The *266 findings must relate to the effect that testifying in court will have on the mental or emotional well-being of the child. What must be established by clear and convincing evidence is the likelihood that the child witness "as a result of extraordinary circumstances * * * will suffer severe mental or emotional harm if required to testify at a criminal proceeding without the use of live, two-way closed-circuit television” (CPL 65.10 [1]). Indications that the child was afraid of the defendant and could testify more readily in his absence, while consistent with the likelihood that the child will suffer "severe mental or emotional harm”, simply do not prove it (accord, Craig v State, 316 Md 551, 560 A2d 1120 [Maryland law]).
Because we conclude that there was an insufficient basis for making the required threshold determination of vulnerability (CPL 65.10 [1]; 65.20), we do not address the propriety of the court’s additional direction under CPL 65.20 (12) that the defendant remain in the courtroom while the child witness testified over television from the testimonial room.
V
Harmless Error
The error in allowing Jennifer to testify using the article 65 procedures was not harmless beyond a reasonable doubt.[11] During her closed-circuit televised testimony, Jennifer, by nodding affirmatively in response to questions, was permitted to put before the jury damning testimony as to the most sensitive details of defendant’s alleged sexual conduct with her.[12]
Although two witnesses testified that they were present in defendant’s apartment and, at one point, had indicated that they were eyewitnesses to the sexual abuse, the testimony of each of these witnesses was inconsistent in certain material *267 respects with the testimony of the other and with his own pretrial account of the incident. The other evidence of defendant’s guilt was circumstantial. Additionally, the physician who examined Jennifer on the night of the incident found no physical signs of abuse. Although there was sufficient evidence on this record to support the conviction, the credibility of certain key prosecution witnesses was suspect. We cannot conclude that there is no reasonable possibility that the error in permitting the jurors to view the televised testimony of the intimate details of the sexual abuse contributed to defendant’s conviction (see, People v Crimmins, 36 NY2d 230, 237). The error, thus, was not harmless beyond a reasonable doubt.
VI
Expert Testimony
Because a new trial is ordered, we address defendant’s challenge to the admission of testimony by the People’s witness, Dr. Meltzer, who had twice examined Jennifer and who was, with consent of defendant, permitted to testify as an expert witness in the fields of child sexual abuse and child development.[13] Dr. Meltzer’s testimony involved her diagnosis of Jennifer and the reactions of child sexual abuse victims to courtroom procedures. Defendant contends this expert testimony was an "unnecessary aid” to the jury and invaded its exclusive province in assessing Jennifer’s credibility. We disagree. The court acted within its discretion in permitting this expert testimony and ruling that the reactions of a four-year-old victim of sexual abuse are not within the ken of a typical juror, and are thus a proper subject for expert testimony (see, People v Keindl, 68 NY2d 410, 422; see also, Matter of Nicole V., 71 NY2d 112, 120-122).
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

. In 1988 the statute was extended for an additional three-year period (L 1988, ch 516, § 1).

. "Live, two-way closed-circuit television” means a simultaneous transmission by closed-circuit television, or other electronic means, between the courtroom and the testimonial room (CPL 65.00 [4]).

. "Child witness” means a person 12 years old or less who is or will be called to testify at a criminal proceeding, other than a Grand Jury proceeding concerning an offense defined in Penal Law § 130.00 or § 255.25 which is the subject of such criminal proceeding (CPL 65.00 [1]).

. As set forth (infra, at 262-263), we construe article 65 as mandating compliance with the requirements of CPL 65.10 (1) for a determination of vulnerability, even when the application for an order is made during the trial pursuant to CPL 65.20 (10).

. See generally, Forman, To Keep the Balance True: The Case of Coy v Iowa, 40 Hastings LJ 437; Parker, The Rights of Child Witnesses: Is the Court a Protector or Perpetrator? 17 New Eng L Rev 643 (1982); Note, The Constitutionality of the Use of Two-Way Closed Circuit Television to Take Testimony of Child Victims of Sex Crimes, 53 Fordham L Rev 995; Halpern, The Confrontation Clause and the Search for Truth in Criminal Trials, 37 Buffalo L Rev 165 (1987); Note, Videotaping Children’s Testimony: An Empirical View, 85 Mich L Rev 809 (1989); Note, The Testimony of Child Victims in Sex Abuse Prosecutions: Two Legislative Innovations, 98 Harv L Rev 806 (1985).

. The concurrence agrees that the provisions of article 65 are sufficiently protective of a defendant’s confrontation rights so that the statute is constitutional on its face. It voices a concern, however, which we share, viz., that there is a possibility that a defendant’s confrontation rights can be violated in the application of the statute unless courts are exacting in their application of all of the statutory limitations and protections, including those which require that the television technology used provide all the trial participants with an adequate opportunity to evaluate the witness’ testimony (see, CPL 65.30 [1]). As we have stated, the Constitution requires that the People demonstrate that the television setup employed in any given case ensures the jury’s ability to assess the demeanor, and thus the credibility, of the vulnerable child witness. We conclude that constitutional standards can be met through a careful application of the statute.

. Notably, the legislative history suggests that it was perceived by some that a literal reading would result in constitutional infirmity because it would permit a Judge, not specifically trained in child sexual assault syndrome, to make a vulnerability determination under CPL 65.20 (10) based solely on his or her own observations (see, Mem of New York City Task Force Against Sexual Assault in general support, Bill Jacket, L 1985, ch 505, at 53; Mem of Legal Aid Society in opposition, id., at 68).

. Although the dissent agrees that article 65 is constitutional, it apparently rejects the basis of our constitutional analysis: "that article 65 is constitutional on its face, but only when the presumption of constitutionality is applied and CPL 65.20 (10) is read as embodying the additional requirements of CPL 65.10 (1).” (Supra, at 257.) It adopts instead the People’s argument, based on a literal construction of CPL 65.20 (10), that the requirements of CPL 65.10 (1) do not apply to in-court applications and that *263 a vulnerability determination may be based solely on the subjective impressions of the trial court. The statute, as so construed, would not be facially constitutional because it would not meet the Coy requirements for an individualized showing of necessity. For the same reasons, the dissent’s conclusion that the statutorily required showing, that "it is likely, as a result of extraordinary circumstances, that such child witness will suffer severe mental or emotional harm” (CPL 65.10 (1), may be made by the court’s observations that the child was afraid of defendant and was better able to testify in his absence (and see additional similar "realities and objective manifestations of vulnerability” recited by the dissent, at 273-274) would render the statute constitutionally infirm.

. The potential trauma that can be suffered by child abuse victims has been widely discussed and documented (see generally, Parker, The Rights of Child Witnesses: Is the Court a Protector or Perpetrator?, 17 New Eng L Rev 643, 648-656; Note, Videotaping Children’s Testimony: An Empirical View, 85 Mich L Rev 809). We note that certain particularly aggravating circumstances listed in CPL 65.20 (9) and reported in some cases are not present here. For example, Jennifer’s alleged abuse was not perpetrated by a family member or an adult who occupied a position of authority over Jennifer (see, CPL 65.20 [9] [c]; cf., People v Algarin, 129 Misc 2d 1016 [child victims, aged 4-6, attended day care center where defendant worked]; Glendening v State, *265 536 So 2d 212 [Fla] [13 1/2-year-old witness sexually abused by father]; State v Thomas, 150 Wis 2d. 374, 442 NW2d 10 [1989] [8-year-old witness sexually abused by baby-sitter]; Brady v State, 540 NE2d 59 [Ind App] [4-year-old witness sexually abused by father]), nor was the alleged abuse repeated over a period of time (see, CPL 65.20 [9] [d]; cf., People v Algarin, supra; Glendening v State, supra; State v Thomas, supra; Brady v State, supra).

. We need not concern ourselves with the possibility of extraordinary circumstances, which we cannot presently envision, where the findings are based upon observations of the court that are undisputed and are of such a nature and so conclusive as to constitute clear and convincing evidence.

. The parties agree that the "harmless error” standard to be applied here is whether the error was harmless beyond a reasonable doubt.

. For example, by signifying an affirmative or negative response to a series of questions put to her by the prosecutor, Jennifer indicated that defendant had touched her anal area with his penis. Moreover, when asked to use anatomically correct dolls to indicate what had occurred with defendant, Jennifer positioned the male doll facedown on top of the female doll which was lying facedown. On cross-examination, defense counsel placed the dolls face-to-face and asked Jennifer if that is what occurred. Jennifer replied, "That’s not the way” and took the dolls, and placed the female doll facedown and placed the male doll facedown on top of the female doll.

. This testimony was presented during the trial-in-chief after the article 65 order was made.