[970 NYS2d 289]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RUBEN BELTRAN, Appellant.

Second Department, August 14, 2013

154

**APPEARANCES OF COUNSEL**

*Ruben Beltran*, pro se, and *Lynn W.L. Fahey*, New York City (*Allegra Glashausser* of counsel), for appellant.

*Charles J. Hynes, District Attorney*, New York City (*Leonard Joblove, Keith Dolan, Catherine Dagoneses* and *Melissa Causey* of counsel), for respondent.

**OPINION OF THE COURT**

Hinds-Radix, J.

The defendant was convicted of two counts of course of sexual conduct against a child in the first degree involving one complainant, and one count of sexual abuse in the first degree involving a second complainant. The first complainant, who was 16 years old at the time of the trial, testified in open court as to events occurring more than eight years earlier. The second

complainant (hereinafter the child), who was seven years old at the time of the trial, testified with the use of live, two-way closed-circuit television pursuant to CPL article 65.

CPL article 65 permits the use of closed-circuit television in the prosecution of certain sex crimes (*see* Penal Law art 130; §§ 255.25, 255.26, 255.27) to elicit the testimony of child witnesses (*see* CPL 65.00 [1]) who are "declared to be vulnerable" (CPL 65.00 [2]). The primary issue on this appeal is whether the Supreme Court properly declared that the child was a vulnerable witness.

The child was born in 2002. The crime against her occurred in March 2008, when she was six years old. She was able to testify in open court about her ability to take an oath, and with regard to general background material about her family. She described the defendant as her "Uncle Ruben." The child's mother testified that the defendant was married to the mother's aunt, and the aunt and the defendant regularly cared for the child in their residence while the child's mother was at work.

Although the child was able to answer general background questions about her family in open court, when questioned about the incident, in the words of defense counsel, she became "overwhelmed to the point where she was just crying and could not . . . respond." The prosecutor made an oral application pursuant to CPL article 65 asking the court to declare that the child was a vulnerable witness, and noted that the People were "prepared to go forward with a hearing . . . with a social worker who could testify about the trauma . . . that would result from forcing the victim to testify in a public courtroom in front of the defendant." Over defense counsel's objection, the Supreme Court directed a hearing on the issue of whether the child was a vulnerable witness within the meaning of CPL article 65. The Supreme Court found that such a hearing was warranted because the child appeared terrified on the witness stand, was crying constantly, and could not speak. The Supreme Court commented that "there are certain instances when a picture is worth a thousand words," noting that it "had the ability to visually watch this child and saw the trauma that she was going through."

At the ensuing hearing, a social worker who had met with the child on at least five prior occasions testified that the child could describe the sexual abuse to her without becoming visibly upset, but became "very emotionally distraught" in open court when she tried to describe the abuse in the presence of the de-

fendant. She also noted that it took the child "a very long time to calm . . . down after she had left the courtroom." The social worker had never seen the child behave in that manner before. The child told the social worker that she was afraid to talk about the incident with the defendant in the room. The social worker stated that it was her "professional assessment" that the child would suffer "severe mental or emotional harm by testifying in open court." Although the social worker testified as to her professional qualifications, the Supreme Court did not declare her to be an expert witness.

The Supreme Court ruled, on the record, that the child was a vulnerable witness, on the grounds that

> "[f]rom the Court's vantage point on the bench approximately three feet from where the witness was seated, it was clear that the child was in severe emotional distress and appeared terrified. Based on the Court's own observations and the testimony of the social worker, it is apparent that being in court is exceptionally traumatic for this young child and that she is suffering from severe mental or emotional harm and is unable to testify. While the Court is mindful of the defendant's constitutional rights, the CPL does authorize this testimony. The Court will permit a two-way video feed . . . and we're making sure that the jury will be able to see her testifying and that she will be able to see the complete courtroom."

During the child's testimony, the defendant remained in the courtroom. The prosecutor and defense counsel were in the room with the child, and provisions were made for defense counsel and the defendant to communicate with each other during the testimony.

On appeal, the defendant contends that allowing the child to testify via closed-circuit television outside his physical presence violated his federal and state constitutional right to confront the witnesses against him because there was no clear and convincing evidence before the court that the child was a vulnerable witness within the meaning of CPL article 65. In support of his position, the defendant emphasizes that the court declared the child to be a vulnerable witness based only on its own observations and the lay opinion of the social worker. The People respond that the court properly declared the child to be a vulnerable witness, pointing out that the testimony of an expert wit-

ness is not required to support a finding of vulnerability. The People further contend that the record establishes the presence of at least two of the statutory factors which are relevant to a determination that a child is a vulnerable witness.

We begin our analysis by examining the statutory framework of CPL article 65. CPL article 65 was first enacted in 1985 (*see* L 1985, ch 505, § 1) for an experimental period of three years, and has thereafter been periodically renewed for additional periods of from one to five years.[1] A child witness was initially defined as a person 12 years old or less, but the definition was amended in 2004 by substituting "fourteen" for "twelve" (L 2004, ch 362, § 2).

CPL 65.10 (1) now states:

> "A child witness shall be declared vulnerable when the court, in accordance with the provisions of section 65.20, determines by clear and convincing evidence that it is likely that such child witness will suffer serious mental or emotional harm if required to testify at a criminal proceeding without the use of live, two-way closed-circuit television and that the use of such live, two-way closed-circuit television will diminish the likelihood or extent of, such harm."

Subdivision (2) of section 65.20 adds a further requirement that the "serious mental or emotional harm . . . would substantially impair the child witness' ability to communicate with the finder of fact without the use of live, two-way closed-circuit television" (CPL 65.20 [2]; *see* Peter Preiser, 2007 Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 65.20, 2013 Pocket Part at 90).

A declaration of vulnerability may be sought by motion "made in writing at least eight days before the commencement of trial or other criminal proceeding upon reasonable notice to the other party and with an opportunity to be heard" (CPL 65.20 [3]). However, pursuant to CPL 65.20 (11):

> "Irrespective of whether a motion was made . . .

---

**1.** (*See* L 1985, ch 505, § 5; L 1988, ch 516, § 1; L 1991, ch 455, § 3; L 1996, ch 359, § 1; L 2000, ch 449, § 1; L 2001, ch 273, § 1; L 2002, ch 163, § 1; L 2003, ch 388, § 1; L 2005, ch 577, § 1; L 2007, ch 56, part C, § 21; L 2009, ch 56, part U, § 19; L 2011, ch 57, part A, § 19.) The current version expires on September 1, 2015 (L 2013, ch 55, part E, § 18). In 1988, CPL article 65 was made applicable to juvenile delinquency proceedings in Family Court (*see* Family Ct Act § 343.1 [4], as added by L 1988, ch 331, § 1).

the court, at the request of either party or on its own motion, may decide that a child witness may be vulnerable based on its own observations that a child witness who has been called to testify at a criminal proceeding is suffering severe mental or emotional harm and therefore is physically or mentally unable to testify or to continue to testify in open court or in the physical presence of the defendant and that the use of live, two-way closed-circuit television is necessary to enable the child witness to testify."

A motion, or a determination that a child witness may be vulnerable pursuant to CPL 65.20 (11), triggers the obligation of the trial court to conduct a hearing, and issue findings of fact (see CPL 65.20 [6], [11]), which shall "reflect the causal relationship between the existence of any one or more of the factors set forth in subdivision nine [sic][2] of this section or other relevant factors which the court finds are established and the determination that the child witness is vulnerable" (CPL 65.20 [12]). The trial court's observations, standing alone, are generally insufficient to support a declaration that the child is a vulnerable witness (see People v Cintron, 75 NY2d 249, 265 [1990]; People v Costa, 160 AD2d 889, 890 [1990]).

CPL 65.20 (10) sets forth a list of relevant factors which a court may consider in determining whether a child witness will suffer serious mental or emotional harm if required to testify in court without the use of closed-circuit television. These factors include such considerations as whether the witness "is particularly young" (CPL 65.20 [10] [b]) and whether the defendant occupied a position of authority over the child (see CPL 65.20 [10] [c]). CPL 65.00 (6) defines a person who occupies "a position of authority with respect to a child" as a person who is:

"a parent, guardian or other person responsible for the custody or care of the child at the relevant time or is any other person who maintains an ongoing personal relationship with such parent, guardian or other person responsible for custody or care, which relationship involves his or her living, or his or her frequent and repeated presence, in the same household or premises as the child."

**2.** The factors were initially set forth in CPL 65.20 (9), but that subdivision was renumbered as CPL 65.20 (10) (see L 2007, ch 548, § 2; Matter of Noel O., 19 Misc 3d 418, 431 [2008]).

When article 65 was originally enacted, a declaration of vulnerability required a determination that, "as a result of extraordinary circumstances, . . . such child witness will suffer severe mental or emotional harm if required to testify at a criminal proceeding without the use of live, two-way closed-circuit television" (CPL 65.10 [former (1)]; *see People v Cintron*, 75 NY2d at 254; *People v Henderson*, 156 AD2d 92, 101 [1990]). However, in 2007, the statutory scheme was amended (*see* L 2007, ch 548) to delete the requirement that there must be "extraordinary circumstances," and to modify the degree of mental or emotional harm which the child would suffer if not permitted to testify via closed-circuit television from "severe" to "serious." The purpose of the 2007 amendment was to liberalize the ability of a judge to declare a witness vulnerable (*see* Senate Mem in Support, 2007 McKinney's Session Laws of NY at 2045-2046). Legislative history further reveals that the 2007 amendment was enacted in recognition of the fact that the two-way closed-circuit television procedure was integral to protect a child witness's mental and emotional health, and "to maintain that witness' ability to communicate successfully with the finder of fact, thereby ensuring the validity and accuracy of the testimony" (*see* Senate Mem in Support, 2007 McKinney's Session Laws of NY at 2045-2046).

A court's determination that a child witness is vulnerable "does not, standing alone, permit the child witness to give televised testimony from the testimonial room in the absence of the defendant" (*People v Cintron*, 75 NY2d at 255). Rather, under the present statutory scheme, once the court has determined that a child witness is vulnerable based upon consideration of the relevant statutory factors, it must next "make a specific finding as to whether placing the defendant and the child witness in the same room during the testimony of the child witness will contribute to the likelihood that the child witness will suffer severe mental or emotional harm" (CPL 65.20 [13]). If such a finding is made, the defendant shall remain in the courtroom during the testimony of the child (*see id.*).

In the instant case, the Supreme Court made its initial determination that the child might be a vulnerable witness triggering the need to conduct a hearing on this issue pursuant to CPL 65.20 (11) based on the fact that the child could not speak and appeared "terrified" when she was questioned about the crime in the defendant's presence. After the hearing, the Supreme Court concluded that the child was indeed suffering from severe

mental or emotional harm based both upon its own observations and the social worker's testimony that the child was afraid to talk about the incident with the defendant in the room (*see People v Watt*, 84 NY2d 948, 952 [1994]). Although the social worker was not qualified as an expert, the presence of expert testimony is simply a factor to be considered in determining whether a child witness is vulnerable (*see* CPL 65.20 [10] [l]), not a mandatory requirement (*see People v Cintron*, 75 NY2d at 265; *People v Paramore*, 288 AD2d 53, 54 [2001]).

■ Upon our review of the record, we find that the Supreme Court properly declared the child to be a vulnerable witness. Since the child was seven years old at the time of the trial, she was "particularly young" (*People v Lindstadt*, 174 AD2d 696, 697 [1991] [nine-year-old witness is particularly young]; *People v Guce*, 164 AD2d 946, 948 [1990] [eight-year-old witness is particularly young]). Further, the defendant occupied a position of authority, since he was the child's great uncle by marriage, the child regarded him as a family member (*see People v Pierce*, 266 AD2d 721 [1999]), he was responsible for the care of the child at the time the crime occurred, and he had frequent contact with her (*see Matter of Noel O.*, 19 Misc 3d at 432). Thus, two of the factors set forth in CPL 65.20 (10) were established by clear and convincing evidence (*see People v Martin*, 294 AD2d 850, 850-851 [2002]; *People v Pierce*, 266 AD2d 721 [1999]; *People v Ramos*, 203 AD2d 599 [1994]). It is also clear from the record that the emotional trauma the child experienced when she attempted to testify in open court about the crime substantially impaired her ability to communicate with the jury. Under all of the circumstances, the Supreme Court's determination that the child was a vulnerable witness is supported by clear and convincing evidence in the record (*see People v Barreto-Mejia*, 101 AD3d 1040 [2012]; *People v Biavaschi*, 265 AD2d 268, 268-269 [1999]).

Furthermore, the child was properly permitted to testify outside of the physical presence of the defendant. The Supreme Court's observations of the child when she was questioned in the courtroom, and the hearing testimony of the social worker, provided clear and convincing evidence that the cause of the child's severe emotional upset was the defendant's presence in the room (*see People v Paramore*, 288 AD2d at 54). Accordingly, the record supports the requisite specific finding that placing the defendant and the child in the same room during the testimony of the child would contribute to the likelihood that

the child would suffer "severe mental or emotional harm" (CPL 65.20 [11]).

■ We reject the defendant's contention that CPL article 65 was unconstitutionally applied in this case so as to deprive him of his federal and state constitutional right to confront the witnesses against him. The Court of Appeals has ruled that live, televised testimony does not deprive a defendant of his or her constitutional right to confrontation if it is done for an important public policy reason and reliability is assured by preservation of the confrontation-related rights of "testimony under oath, the opportunity for contemporaneous cross-examination, and the opportunity for the judge, jury, and defendant to view the witness's demeanor as he or she testifies" (*People v Wrotten*, 14 NY3d 33, 39 [2009], *cert denied* 560 US —, 130 S Ct 2520 [2010], citing *Maryland v Craig*, 497 US 836, 851 [1990]). In *People v Wrotten*, the Court of Appeals noted that Judiciary Law § 2-b (3) authorized a court of record "to devise and make new process and forms of proceedings, necessary to carry into effect the powers and jurisdiction possessed by it," including authorizing two-way televised testimony at a criminal trial, under circumstances where the legislature has not authorized such testimony by statute, if there were "exceptional circumstances" present (14 NY3d at 40).

In *Maryland v Craig* (497 US 836 [1990]), the United States Supreme Court considered the constitutionality of a Maryland statute which authorized a child witness in a child abuse case to give one-way televised testimony, whereby the child is visible to those in the courtroom, but those in the courtroom were not visible to the child. The Court determined that, under the Confrontation Clause, a face-to-face confrontation was preferred but not "indispensable" (*id.* at 849). It further ruled that a face-to-face confrontation could be dispensed with upon a showing of necessity, and the showing required by the Maryland statute—that the child will suffer "serious emotional distress such that the child cannot reasonably communicate" if he or she were required to testify in the presence of the defendant (Md Code Ann, Cts & Jud Proc former § 9-102 [a] [1] [ii], now Md Code Ann, Crim Proc 11-303 [b] [1])—satisfied that standard. If the trauma to the child was not the result of the presence of the defendant, face-to-face confrontation with the defendant could not be dispensed with, since, in those circumstances, the child could testify in less intimidating surroundings with the defendant present (*see Maryland v Craig*, 497 US at 856).

In the instant case, those standards were met. The evidence established the likelihood that the child would suffer severe mental or emotional harm if required to testify in the defendant's physical presence as required by the New York statute (CPL 65.20 [12]). Moreover, in contrast to *Maryland v Craig*, here, the child testified by way of two-way closed-circuit television, so that she could see the defendant during her testimony, and the defendant could see her. This two-way system allowed for face-to-face confrontation between the defendant and the child, thus preserving

"the salutary effects of face-to-face confrontation [which] include (1) the giving of testimony under oath; (2) the opportunity for cross-examination; (3) the ability of the fact-finder to observe demeanor evidence; and (4) the reduced risk that a witness will wrongfully implicate an innocent defendant when testifying in his presence" (*United States v Gigante*, 166 F3d 75, 80 [2d Cir 1999], *cert denied* 528 US 1114 [2000]).

Indeed, federal law permits a child victim to testify in federal criminal prosecutions outside the courtroom by way of two-way closed-circuit television if the court finds that the child "is unable to testify in open court in the presence of the defendant," inter alia, because of fear, or "a substantial likelihood, established by expert testimony, that the child would suffer emotional trauma from testifying" (18 USC § 3509 [b] [1] [B] [i], [ii]). Although "confrontation through a video monitor is not the same as physical face-to-face confrontation" (*United States v Yates*, 438 F3d 1307, 1315 [11th Cir 2006]; *see United States v Gigante*, 166 F3d at 81), there is no constitutional infirmity if there has been a case-specific finding of necessity in furtherance of an important public policy (*see United States v Yates*, 438 F3d at 1315). That test was satisfied in this case. Further, since the child appeared and was cross-examined by the defendant, the defendant's confrontation rights, as described in *Crawford v Washington* (541 US 36 [2004]), were not violated (*see People v Whitman*, 205 P 3d 371, 381 [Colo Ct App 2007], *cert denied* 2008 WL 2581401, 2008 Colo LEXIS 704 [2008], citing *Crawford v Washington*, 541 US at 59 n 9).

Turning to the other issues raised by the defendant, we conclude that the Supreme Court providently exercised its discretion in denying the defendant's motion pursuant to CPL 200.20 (3) to sever certain charges in the indictment (*see People*

*v Martinez*, 69 AD3d 958, 959 [2010]; *see also People v Lane*, 56 NY2d 1, 10 [1982]). The charges in the indictment were properly joined pursuant to CPL 200.20 (2) (c), since the crimes share common elements and the criminal conduct at the heart of each crime is comparable (*see People v Pierce*, 14 NY3d 564, 574 [2010]; *People v McAvoy*, 70 AD3d 1467 [2010]). The defendant's claim that the Supreme Court failed to instruct the jury with respect to its duty to consider the crimes separately is unpreserved for appellate review (*see* CPL 470.05 [2]; *People v Stewart*, 178 AD2d 448, 448 [1991]) and, in any event, without merit (*see People v Harris*, 29 AD3d 387, 388 [2006]; *People v Nelson*, 133 AD2d 470, 471 [1987]).

However, the People correctly concede that the first and second counts of the indictment are multiplicitous, since those counts both allege a course of sexual conduct against a child in the first degree, although there was no interruption in that course of conduct against the child victim at issue (*see People v Moore*, 59 AD3d 809, 810-811 [2009]; *People v Quinones*, 8 AD3d 589, 590 [2004]).

The defendant's claims of ineffective assistance of counsel are not properly before this Court, as they involve matter dehors the record.

The defendant's remaining contentions, including those raised in his pro se supplemental brief, are without merit.

Accordingly, the judgment is modified, on the law, by vacating the conviction of course of sexual conduct against a child in the first degree under count two of the indictment, vacating the sentence imposed thereon, and dismissing that count of the indictment; as so modified, the judgment is affirmed.

SKELOS, J.P., HALL and AUSTIN, JJ., concur.

Ordered that the judgment is modified, on the law, by vacating the conviction of course of sexual conduct against a child in the first degree under count two of the indictment, vacating the sentence imposed thereon, and dismissing that count of the indictment; as so modified, the judgment is affirmed.