[923 NE2d 1099, 896 NYS2d 711]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JUWANNA WROTTEN, Respondent.

Argued November 17, 2009; decided December 15, 2009

## POINTS OF COUNSEL

*Robert T. Johnson, District Attorney,* Bronx (*Peter D. Codding-ton* and *Hannah E.C. Moore* of counsel), for appellant. Nisi prius

correctly permitted the complainant to testify via live, two-way television in a criminal trial. (*People v Cintron,* 75 NY2d 249; *Coy v Iowa,* 487 US 1012; *Maryland v Craig,* 497 US 836; *United States v Moses,* 137 F3d 894; *United States v Weekley,* 130 F3d 747; *United States v Turning Bear,* 357 F3d 730; *United States v Rouse,* 111 F3d 561; *United States v Etimani,* 328 F3d 493; *United States v Miguel,* 111 F3d 666; *United States v Quintero,* 21 F3d 885.)

*Office of the Appellate Defender,* New York City (*Daniel A. Warshawsky, Richard M. Greenberg* and *Anastasia B. Heeger* of counsel), for respondent. I. In allowing the complainant to testify against Juwanna Wrotten via two-way television, the trial court exceeded its authority, made a substantive policy determination that only the Legislature could make, and violated the Criminal Procedure Law, and Ms. Wrotten is therefore entitled to a new trial. (*Maryland v Craig,* 497 US 836; *People v Cintron,* 75 NY2d 249; *Bourquin v Cuomo,* 85 NY2d 781; *Cohen v State of New York,* 94 NY2d 1; *Matter of A.G. Ship Maintenance Corp. v Lezak,* 69 NY2d 1; *People v Ricardo B.,* 73 NY2d 228; *People v Mezon,* 80 NY2d 155; *People v Ayala,* 75 NY2d 422; *Farrington v Pinckney,* 1 NY2d 74; *Straus & Co. v Canadian Pac. Ry. Co.,* 254 NY 407.) II. The two-way video testimony of the complainant violated Juwanna Wrotten's right to confrontation under the United States and New York Constitutions and, where no important public policy justified the court's decision to permit the complainant to testify in that manner, Ms. Wrotten's conviction must be reversed. (*Maryland v Craig,* 497 US 836; *People v Cintron,* 75 NY2d 249; *Ohio v Roberts,* 448 US 56; *Crawford v Washington,* 541 US 36; *Coy v Iowa,* 487 US 1012; *Pointer v Texas,* 380 US 400; *United States v Bordeaux,* 400 F3d 548; *United States v Yates,* 438 F3d 1307; *United States v Gigante,* 166 F3d 75; *Gentry v Deuth,* 381 F Supp 2d 614, 456 F3d 687.) III. Where evidence adduced at trial by Juwanna Wrotten tended to establish that she had employed only non-deadly physical force against the complainant, and that she had only employed that force to repel the complainant's attack against her, the court erred in failing to charge the jury with a justification defense under Penal Law § 35.15 (1). (*People v Butts,* 72 NY2d 746; *People v Petty,* 7 NY3d 277; *People v McManus,* 67 NY2d 541; *People v Rivera,* 138 AD2d 169; *People v Padgett,* 60 NY2d 142; *People v Spittler,* 168 AD2d 919; *People v Wesley,* 76 NY2d 555; *People v Ogodor,* 207 AD2d 461; *People v Jones,* 148 AD2d 547.)

*Richard D. Willstatter*, New York City, and *Murray E. Singer*,

Great Neck, for New York State Association of Criminal Defense Lawyers, amicus curiae. The trial court lacked the authority to permit the complainant to testify from another state by means of a live, two-way television transmission.

## OPINION OF THE COURT

CIPARICK, J.

In *People v Cintron* (75 NY2d 249 [1990]), we upheld the use of two-way televised testimony of a vulnerable child witness and concluded that no violation of either the Federal or State Constitution existed. On this appeal, we are asked to determine whether Supreme Court erred in permitting an adult complainant living in another state to testify via real-time, two-way video after finding that because of age and poor health he was unable to travel to New York to attend court. We conclude that Supreme Court did not err, as the court's inherent powers and Judiciary Law § 2-b vest it with the authority to fashion a procedure such as the one employed here. Furthermore, we conclude that defendant's confrontation rights have not been unconstitutionally impaired.

In June 2003, defendant, a home health aide, was with 83-year-old complainant at his home in the Bronx. They were making food to bring to complainant's wife, who was in a nursing home. According to complainant, defendant suddenly hit him from behind with a hammer and demanded money, which he gave her. According to defendant, she hit complainant with "something" only after he grabbed her breast, and she neither asked for nor received money. Complainant suffered five head wounds and two broken fingers. Shortly after the incident, he moved to California to be near his children. Defendant was indicted for assault in the first degree and two counts of robbery in the first degree.

Prior to trial, the People sought and were granted a conditional examination of complainant pursuant to CPL 660.20.[1] This examination proved unfeasible, however, because CPL article 660 requires that the examination be conducted in New York State and complainant was unable to travel. The People then requested that the conditional examination be allowed to proceed via two-way video conferencing, with the witness

---

1. The People alternatively sought to examine the complaining witness upon commission in California pursuant to CPL 680.20 and 680.30. This relief was denied because the statute provides that such commission is available only upon the application of a defendant (CPL 680.30).

remaining in California and the commissioners conducting the examination in New York. Supreme Court granted the relief sought, but required that complainant's video appearance be live at trial and that the People first demonstrate that the witness would otherwise be unavailable to testify in New York.

After a hearing at which both the People and the defendant presented expert medical testimony, the court, crediting the People's experts, held that complainant—at that time 85 years old, frail, unsteady on his feet, and with a history of coronary disease—could not travel to New York without endangering his health, and was therefore unavailable. At trial, complainant testified live from a courtroom in California via two-way video, appearing "on screen." He stated that he could see the judge, prosecutor, defense counsel, defendant, and jury. The judge stated that the witness could be seen "very clearly," including "any expressions on his face."

Defendant was convicted of second degree assault only. On appeal, a divided Appellate Division reversed and vacated the conviction, holding that, in the absence of any express legislative authorization, Supreme Court lacked authority to permit the admission of televised testimony (*People v Wrotten*, 60 AD3d 165, 167 [1st Dept 2008]). The dissent concluded that Supreme Court retained discretion under its inherent powers and Judiciary Law § 2-b (3) to utilize this new procedure without legislative authorization (*Wrotten*, 60 AD3d at 192). A Justice of that court granted leave to appeal and we now reverse.

Although the Legislature has primary authority to regulate court procedure, "the Constitution permits the courts latitude to adopt procedures consistent with general practice as provided by statute" (*People v Ricardo B.*, 73 NY2d 228, 232 [1989]). By enacting Judiciary Law § 2-b (3), the Legislature has explicitly authorized the courts' use of innovative procedures where "necessary to carry into effect the powers and jurisdiction possessed by [the court]." Thus, as we have acknowledged, courts may fashion necessary procedures consistent with constitutional, statutory, and decisional law (*see Ricardo B.*, 73 NY2d at 232-233 [a trial court has authority to empanel two juries, despite clear statutory references to a single jury and no statutory authorization for multiple juries]).

Unable to find any explicit statutory prohibition regarding two-way televised testimony at trial, defendant argues that extant statutes implicitly preclude its admission. However, there

is no specific statutory authority evincing legislative policy proscribing televised testimony. Indeed, the CPL requires live video testimony of a child witness in a prosecution of a sex crime after a judicial finding of "vulnerability" (CPL 65.00-65.30).[2] The CPL is silent as to other types of witnesses, like complainant here whom the trial court found to be elderly, infirm, and physically incapable of appearing in court. Because article 65 addresses only a single, discrete circumstance and otherwise leaves courts' preexisting authority unaffected (CPL 65.10 [3] ["(n)othing herein shall be construed to preclude the court from exercising . . . any authority it otherwise may have to protect the well-being of a witness and the rights of the defendant"]), such witnesses' testimony via two-way televised transmission is presumably left to the trial court's discretion.

■ Neither do the statutes providing for preservation of pretrial testimony implicitly preclude the admission of live video testimony. CPL article 680 permits testimony taken by "examination on a commission" outside New York on defendant's application to be received as evidence at trial (CPL 680.10, 680.20). CPL article 660 allows either party to secure testimony—including videotaped testimony—for subsequent use in a case where the witness will be unavailable for trial (CPL 660.10, 660.20). These statutes do not speak to the permissibility of real-time video testimony subject to cross-examination in front of a jury. Nowhere does the CPL purport to list all instances where live video testimony is permissible or all possible solutions to the problem of an unavailable witness. Supreme Court, acting pursuant to its inherent powers as defined in the New York Constitution and Judiciary Law, was therefore not precluded from exercising its authority to utilize necessary, extrastatutory procedures.

■ Moreover, the exercise of this authority following a finding of necessity is permissible under the Confrontation Clauses of both the Federal and State Constitutions. We held in *Cintron* that CPL article 65's authorization of two-way closed-circuit testimony in a criminal trial passes constitutional muster (75 NY2d at 253). Soon after, the United States Supreme Court held that live testimony via one-way closed-circuit television is permissible under the Federal Constitution, provided there is an

---

2. Article 65 mandates that, on the motion of either party, a court must consider evidence of a child witness's vulnerability and, if the court finds the child to be vulnerable, it must permit video testimony (CPL 65.00-65.30).

individualized determination that denial of "physical, face-to-face confrontation" is "necessary to further an important public policy" and "the reliability of the testimony is otherwise assured" (*Maryland v Craig*, 497 US 836, 850 [1990]). Thus, assuming without deciding that two-way video does not always satisfy the Confrontation Clause's "face-to-face meeting" requirement (*cf. United States v Gigante*, 166 F3d 75, 81 [2d Cir 1999] [not applying the *Craig* standard because the trial court's use of two-way video "preserved the face-to-face confrontation"]), complainant's testimony would nonetheless be admissible under the federal standard if findings of necessity and reliability were made by the trial court.

Live two-way video may preserve the essential safeguards of testimonial reliability, and so satisfy the Confrontation Clause's primary concern with "ensur[ing] the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact" (*Craig*, 497 US at 845). Essential to the holding in *Craig* was that "all of the other elements of the confrontation right" were preserved, including testimony under oath, the opportunity for contemporaneous cross-examination, and the opportunity for the judge, jury, and defendant to view the witness's demeanor as he or she testifies (*id.* at 851). These traditional indicia of reliability were all present in this case.

Additionally, if Supreme Court's findings were supported by clear and convincing evidence, *Craig*'s public policy requirement is satisfied here. Nowhere does *Craig* suggest that it is limited to child witnesses or that a "public policy" basis for finding necessity must be codified. Indeed, federal courts have permitted live video testimony in a variety of circumstances, including instances where public policy is implicated by a key witness too ill to appear in court (*see e.g. Horn v Quarterman*, 508 F3d 306, 317-318 [5th Cir 2007] [denying habeas relief where state court admitted two-way video testimony of witness too ill to travel]; *United States v Benson*, 79 Fed Appx 813 [6th Cir 2003] [permitting the two-way video testimony of an elderly witness too ill to travel]; *United States v Gigante*, 166 F3d 75, 79 [2d Cir 1999] [permitting two-way video testimony of a key prosecution witness too ill to travel]). Other states have likewise

allowed the admissibility of two-way video testimony.[3] We agree that the public policy of justly resolving criminal cases while at the same time protecting the well-being of a witness can require live two-way video testimony in the rare case where a key witness cannot physically travel to court in New York and where, as here, defendant's confrontation rights have been minimally impaired.

Live televised testimony is certainly not the equivalent of in-person testimony, and the decision to excuse a witness's presence in the courtroom should be weighed carefully. Televised testimony requires a case-specific finding of necessity; it is an exceptional procedure to be used only in exceptional circumstances. We do not decide here whether Supreme Court's finding of necessity rested on clear and convincing evidence, as the Appellate Division did not address that question. We only pass on whether Supreme Court had authority to utilize a procedure "necessary to carry into effect the powers and jurisdiction possessed by it" (Judiciary Law § 2-b [3]). As the dissent below correctly noted, "[i]n the absence of direction from the Legislature, Supreme Court retained discretion . . . to determine what steps, if any, could be taken to permit this prosecution to proceed notwithstanding the complaining witness's inability to be physically present in the courtroom" (*Wrotten*, 60 AD3d at 192).

Accordingly, the order of the Appellate Division should be reversed and the case remitted to that court for consideration of the facts (*see* CPL 470.25 [2] [d]; 470.40 [2] [b]) and all other issues raised but not determined on the appeal to that court.

JONES, J. (dissenting). In the absence of *any* express legislative authorization, the trial court here lacked the authority to permit the complainant to testify from California via live two-way television. Accordingly, I dissent and would affirm the order of the Appellate Division.

The Legislature provided for the taking of testimony by live two-way television *only* under the limited circumstances set forth under article 65 of the Criminal Procedure Law (L 1985,

---

**3.** *See e.g. Bush v State* (193 P3d 203, 215-216, 2008 WY 108, ¶ 52 [2008] [approving live video testimony of a witness too ill to travel to court in Wyoming]); *State v Sewell* (595 NW2d 207, 210 [Minn Ct App 1999] [approving live video testimony of a witness too ill to travel to court in Minnesota]); *Harrell v State* (709 So 2d 1364, 1368-1371, 23 Fla L Wkly 236 [1998] [approving live video testimony where witnesses could not travel to court in Florida, in part because of one witness's ill health]).

ch 505), which was enacted in response to the widespread recognition that child victims of sex abuse crimes typically suffer from acute anxiety and psychological trauma when giving live testimony (*see People v Cintron*, 75 NY2d 249, 254 [1990] ["The legislative purpose for permitting (certain child witnesses to testify via live two-way closed-circuit television) is the avoidance of the severe mental or emotional harm that may result from requiring a child witness to testify in the public atmosphere of the courtroom concerning the intimate sexual details of the crime"]). In enacting article 65, the Legislature promulgated a comprehensive scheme

> "designed to further the aim of insulating child witnesses from the trauma of testifying in open court and also, under certain conditions, from having to testify in the presence of the defendant while, at the same time, fully preserving the defendant's constitutional rights (*see* Mem of Dept of Law, Bill Jacket, L 1985, ch 505, at 34-38; Preiser, 1985 Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 65.00, 1990 Supp Pamph, at 485-486)" (*id.*).

"The Legislature drafted article 65 with full recognition of the necessity of safeguarding a defendant's confrontation rights and with the explicit aim of providing sufficient limitations and protections to meet the constitutional requirements" (*id.* at 260, citing Mem of Dept of Law and numerous other memoranda in support, Bill Jacket, L 1985, ch 505). Further, the Legislature explicitly detailed that (1) article 65 applies only in prosecutions for incest or sex crimes under article 130 of the Penal Law where the testifying witness is 14 years of age or younger and found to be vulnerable to psychological harm if compelled to testify in the presence of the defendant, (2) in order for a child witness to be declared vulnerable (in such case, trial court must permit the televised testimony), the trial court must "determine[ ] by clear and convincing evidence that the child witness would suffer serious mental or emotional harm that would substantially impair the child witness' ability to communicate with the finder of fact without the use of live, two-way closed-circuit television" (CPL 65.20 [2]), and (3) a trial court, in considering a vulnerability application, may consider whether any one or more of 12 enumerated circumstances have been established by clear and convincing evidence (*see* CPL 65.20 [10]).

In this case the trial court allowed the televised testimony based on its finding that the People established by clear and convincing evidence that complainant was unable to travel to

New York without seriously endangering his health and was thus unavailable to testify. This was error.

From the exhaustive nature of the Legislature's grant of authority permitting courts to receive televised testimony under the specific limited circumstances discussed above, there is a strong inference that the Legislature intended to exclude grants of authority under other circumstances (such as those present here).* In my view, the detail that attends CPL article 65, coupled with the CPL's silence as to other circumstances where a court may admit live two-way televised testimony, sets the parameters of the trial court's discretion. Thus, by allowing the instant complainant's testimony, the trial court exceeded its discretionary authority. Contrary to the majority's suggestion, the trial court did not have "preexisting authority" (majority op at 38) to admit complainant's testimony pursuant to CPL 65.10 (3). That provision, which must be read in the context of the child witnesses covered under article 65, speaks to a court's inherent authority to protect the well-being of such witnesses, not the general (and amorphous) "preexisting authority" the majority speaks of. According to this article's Bill Jacket,

> "[s]ection 65.10 . . . clarifies that the power to order the use of closed-circuit television in no way supplants the court's . . . inherent authority to otherwise protect the well-being of the child. The bill leaves undisturbed the court's power to, among other measures, allow for the presence of a person who can provide emotional support to the child witness when he or she testifies or adjust the courtroom setting to make it more comfortable and less threatening to the child witness" (Mem of Dept of Law, Bill Jacket, L 1985, ch 505, at 21).

In light of the fact that the Legislature has with painstaking detail addressed the subject of when certain absent witnesses can testify by means of two-way television, Judiciary Law § 2-b (3) cannot serve as the basis for granting trial courts the authority to receive such testimony. Section 2-b (3) authorizes a court of record to create new procedures "necessary to carry into effect the powers and jurisdiction possessed by [the court]."

---

* The level of specificity employed by the Legislature in enacting article 65 and addressing when witnesses can testify outside the courtroom (by depositions, conditional examinations [CPL article 660] and examinations on commission [CPL article 680]) implies that similar activities not specifically authorized are forbidden.

However, it does not authorize a court to fashion a procedure that is inconsistent with existing law. Nor does it authorize a court to disregard the critical policy decisions already made by the Legislature. In reversing the Appellate Division, the majority, under the guise of upholding the inherent powers of the courts, has recognized a trial court ruling that is wholly inconsistent with article 65 (the existing law) and accorded no weight to the substantive policy choices made by the Legislature. Under the circumstances of this case, therefore, section 2-b (3) is inapposite.

If the inherent powers of the courts are sufficient to authorize the televised testimony in this case or, as stated by the majority, allow a trial court to make a "finding of necessity" (majority op at 38) regarding such testimony, these powers necessarily represent a broad source of authority that would permit trial courts to use live, two-way, televised testimony in ways not contemplated under article 65. That is, there would have been no need for the Legislature to enact article 65 in the first place. For example, a court, under its inherent powers, could be authorized to use such testimony in cases where it would be medically unsafe for any witness, regardless of age or where the witness resides, to travel to the particular New York court where the criminal matter is pending.

In addition, the majority's use of the phrase "finding of necessity" is confusing. If the majority is arguing that allowing complainant's testimony was "necessary to carry into effect the powers and jurisdiction possessed by [the court]" (Judiciary Law § 2-b [3]), that argument fails because the majority has not established, outside the circumstances prescribed in CPL article 65, that trial courts have the authority (discretionary or otherwise) to admit the testimony at issue. If the majority is arguing that allowing such testimony furthers an important public policy, they are necessarily referring to a policy decision the Legislature has not to this point made.

Moreover, the majority's view of the courts' inherent powers presents a number of problems. First, there does not appear to be any discernible limitation, within the inherent powers of the courts, on a court's authority to allow the admission of an absent witness's televised testimony as long as it is "necessary to carry into effect the powers and jurisdiction possessed by [the court]" (Judiciary Law § 2-b [3]). Second, what happens when individual courts, on similar facts, reach different conclusions as to whether to allow the admission of televised testimony or

some other subject pertaining to the State's public policy? Third, it appears that the majority's ruling effectively circumscribes the Legislature's role by allowing trial courts to (a) determine issues with public policy implications on a case by case basis and (b) create procedural rules for the sole purpose of allowing prosecutions to proceed (in direct contravention to state law).

In sum, because there was no express legislative authorization permitting the complainant to testify from California via live two-way television, the trial court here lacked the authority to admit complainant's testimony.

SMITH, J. (dissenting). I join Judge Jones's dissent, but add my own because I think that the majority's opinion is wrong on the constitutional issue as well as the statutory one.

Article I, § 6 of the New York State Constitution ("In any trial in any court whatever the party accused shall . . . be confronted with the witnesses against him or her") and the Sixth Amendment to the United States Constitution ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him") protect the right of confrontation. (I assume here that the content of the state and federal rights is the same; I know of no authority holding otherwise.) If, as the majority holds, what happened in this case is permissible under the Criminal Procedure Law, the constitutional questions presented are whether defendant was denied her right of confrontation and if so whether there is an adequate excuse for the denial. I answer yes to the first question and no to the second.

The right of confrontation includes—indeed, is, at its core— the right to meet one's accuser face to face (*Coy v Iowa*, 487 US 1012, 1016 [1988]). Neither our Court nor the United States Supreme Court has held, and I would not now hold, that a two-way-television encounter is "face to face" in this sense. The assumption underlying the constitutional right of confrontation is that a witness brought into the presence of the accused will be less likely to swear to a false accusation, or to do so convincingly (*id.* at 1019). The point of confrontation is thus the psychological effect it has on the witness. That effect is, beyond question, substantially diluted when, though the witness and the accused can see each other, the witness knows that the accused is far away. I therefore conclude that defendant in this case was not permitted to "confront" her accuser in the constitutional sense, and I would reject so much of *United States*

*v Gigante* (166 F3d 75, 80-81 [2d Cir 1999]) as may be read to hold otherwise.

That conclusion does not resolve the case, because we held in *People v Cintron* (75 NY2d 249 [1990]) and the United States Supreme Court held in *Maryland v Craig* (497 US 836 [1990]) that the right of face to face confrontation is not absolute, and may be denied where "an appropriate individualized showing of necessity is made" (*Cintron*, 75 NY2d at 258)—or, as the Supreme Court put it, where "denial of such confrontation is necessary to further an important public policy" (*Craig*, 497 US at 850). But *Cintron* and *Craig* involved child victims in sexual assault cases, and presented a far more compelling case than this one for making an exception to the right of confrontation.

In *Cintron* and *Craig*, the harm to be avoided—emotional trauma to a child—would be caused by the confrontation itself; there was no way to avoid the harm except by dispensing with face to face confrontation. Here, the threatened harm is to the health of an elderly witness from the stress of travel, and there is a way to avoid that harm without depriving defendant of her confrontation right: bring the accused to the witness, instead of bringing the witness to the accused. In other words, the dilemma could be resolved by allowing the deposition or conditional examination of the complainant to be taken in California, with defendant present. It may well be that that solution is not available under New York's statutes, but this does not affect the constitutional analysis. New York cannot deprive defendant of her constitutional right by its Legislature's choice not to provide for a way of accommodating both that right and the witness's legitimate interest.

Thus, while I agree with Judge Jones that the Appellate Division's reversal of defendant's conviction on statutory grounds—a result that has the virtue of avoiding the constitutional issue—was correct, I also believe that, if the constitutional issue is reached, we should decide it in defendant's favor.

Judges GRAFFEO, READ and PIGOTT concur with Judge CIPARICK; Judge JONES dissents and votes to affirm in a separate opinion in which Judge SMITH concurs; Judge SMITH dissents in another dissenting opinion; Chief Judge LIPPMAN taking no part.

Order reversed, etc.