OPINION OF THE COURT
Frank J. LaBuda, J.
Defendant in the above-captioned matter is on trial by indict *734 ment charged with murder in the first and second degrees, burglary, arson, larceny and insurance fraud involving the death of his estranged wife, Catherine Novak, on December 13, 2008. The case is currently before a jury on the People’s direct case as the trial enters its fourth week.
Defendant, by motion, has requested the court to permit one of the defense witnesses, Deputy David Wiggins,[1] to testify via live, two-way video conference through Skype. Defendant has indicated Deputy Wiggins is a necessary witness for the defense and will not be able to testify in New York, and therefore must be permitted to do so from a remote location via the Internet. The People have not submitted opposing papers, but insist on a finding of necessity by the court for such a televised procedure. It must be noted that the New York State Police obtained a sworn written statement in Florida from Deputy Wiggins.
The changing advances in communication, Internet and the other advances in technology present courts with new and challenging trial issues.
“Live televised testimony is certainly not the equivalent of in-person testimony, and the decision to excuse a witness’s presence in the courtroom should be weighed carefully.” (People v Wrotten, 14 NY3d 33, 40 [2009].) There is no explicit statutory prohibition regarding live, two-way televised testimony in the courtroom during a trial, and in fact, the New York Constitution “ ‘permits the courts latitude to adopt procedures consistent with general practice as provided by statute.’ ” (Id. at 37, citing People v Ricardo B., 73 NY2d 228, 232 [1989]; see also Judiciary Law § 2-b.) In People v Cintron (75 NY2d 249 [1990]), the Court of Appeals upheld the use of two-way televised testimony of a “vulnerable child witness,” concluding there was no violation of the State or Federal Constitutions. “Indeed, the CPL requires live video testimony of a child witness in a prosecution of a sex crime after a judicial finding of ‘vulnerability’ (CPL 65.00-65.30). The CPL is silent as to other types of witnesses.” (People v Wrotten, 14 NY3d at 38.)
In accordance with the holding in Wrotten, this court finds that permitting two-way televised live testimony of a witness *735 during a trial, other than a vulnerable child, is in the sole discretion of the court. Such a finding, however, does not mean a court may flippantly grant such requests without first making a “finding of necessity” and that the communication device will be reliable, so as to protect a defendant’s rights under the Confrontation Clause of the Federal and State Constitutions. (See Wrotten at 38.) The United States Supreme Court has held that, where there is an individualized finding that denial of “ ‘physical, face-to-face confrontation’ is ‘necessary to further an important public policy,’ ” and will not violate the Confrontation Clause because it is necessary and reliable, the trial court may allow remote, two-way, live testimony. (People v Wrotten, 14 NY3d at 39; see Maryland v Craig, 497 US 836, 850 [1990].)
In the instant matter, this court finds that first the defendant is making this application for two-way video conference of a defense witness, because his current police assignment would not permit him sufficient leave to attend the trial in New York. There is a necessity to have Deputy Wiggins testify via Skype: Due to the length and time constraints of this trial, the hardship Deputy Wiggins would experience in having to lose time from work to travel from Florida to New York, the delay in the trial if the witness had to arrange to travel to New York to testify, and the unexpected use of this witness by the defense.[2] In addition, with the use of live, two-way video via Skype, the witness will be subject to cross-examination before the jury, making the testimony reliable. Most important, however, is that unlike all of the cases cited supra, defendant does not object to the use of Skype to facilitate two-way live testimony for this witness. It is defendant who is making the request, thereby minimizing concerns regarding Confrontation Clause issues. (Maryland v Craig, 497 US 836, 850 [1990].) However, the People’s concern for their fair cross-examination is also a concern. The evidence and testimony of LaFrance shows that there is a relevant and material inconsistency with a portion of her 6x/2-hour recorded interview with the State Police, as well as with her sworn written statement of April 4, 2012,[3] with that of the version related to Deputy Wiggins.
*736 This court also finds that Internet Skype communication is reliable, accurate and widely used in society and commerce.
Therefore, considering the necessity of this witness’ testimony, the necessity that he testify via Skype, the opportunity for live, televised cross-examination before the jury, the reliability of the use of Skype communication in our society, and the fact that defendant has made the request for Skype testimony, it is ordered that defendant’s request to have Deputy Wiggins testify remotely via two-way video conference/Skype is granted; and it is further ordered that the testimony must be presented in the courtroom, in full view of the jury and defendant; and it is further ordered that defendant shall coordinate with the Chief Clerk of the Court to arrange for the proper equipment to be in working order and in communication with the equipment at the witness’ location on or before the date the witness is expected to testify; and it is further ordered that the two-way video testimony of Deputy Wiggins shall be recorded by a court stenographer and preserved for appellate review in the same manner in which it would be recorded if the witness were testifying live in the courtroom.

. Deputy Wiggins is a deputy sheriff for the Volusia County Sheriff’s Department in the State of Florida. On April 17, 2012, the People’s principal witness, Michelle LaFrance, was having a relationship with Deputy Wiggins and recounted to him the events of December 12-13, 2008 (the murder and arson), as related to her by the defendant, Paul Novak, her estranged paramour. The People contend Deputy Wiggins was the first person to whom LaFrance related her story.

. Deputy Wiggins was on the prosecutor’s witness list prior to jury selection, but the prosecution has decided not to call him.

. The critical issue for the defense is, among other matters, the inconsistency in LaFrance’s testimony that the chloroform used to sedate the victim was allegedly made in the kitchen and not the attic of her and defendant’s apartment the night before the murder, in Glen Cove, New York.