■ The People of the State of New York, Respondent, v Carlo Giurdanella, Appellant. [41 NYS3d 496]—

Judgment, Supreme Court, New York County (Ruth Pickholz, J.), rendered October 29, 2013, convicting defendant, after a jury trial, of assault in the second degree, and sentencing him to a term of 30 days, unanimously affirmed.

The People made the requisite showing that it was necessary for the complainant to testify by videoconferencing, given the highly unusual circumstance that the complainant had returned to his native country, whose government then prevented him from leaving, after defendant's trial had already commenced.

In late August 2012, approximately two months after he was allegedly assaulted by defendant, the complainant, a dual citizen of the United States and Egypt, returned to Egypt for

rehabilitation of his fractured wrist and knee. The record reflects that at the time the complainant was to return to the United States to testify at defendant's trial, Egypt was in a state of political upheaval. The prosecutor had conscientiously arranged for and monitored the complainant's return, communicating with him and confirming his intent to return, providing him with a plane ticket, and communicating with the United States Department of State, the United States Embassy in Cairo, and the Egyptian consulate in New York to ensure that there would be no obstacles. Nevertheless, when the complainant sought to board a plane on June 26, 2013, he was prohibited from doing so by Egyptian immigration officials who told him that he could not leave the country because he had not fulfilled his legal requirement of serving in the Egyptian military.

The prosecutor learned this from an email message he received from a State Department attaché, and informed the court of it, on the afternoon of June 26, shortly after the trial had begun and jeopardy had attached. While the prosecutor told the court that he was looking into whether the complainant could get on a plane "tomorrow or the next day," he also proposed the possibility that the complainant testify by remote, two-way closed circuit television from Egypt. Defense counsel objected to the proposal on Confrontation Clause grounds. After hearing from both sides on the issue, the court ultimately ruled that the People were not at fault for the complainant's absence and had done all they could, and that they had established the required necessity for allowing the remote video testimony.

Before the complainant's televised testimony commenced, defense counsel told the court that he had found information on the Internet regarding Egyptian military conscription requirements, indicating that the complainant was exempted from service because he was a dual citizen. Counsel produced two documents on this subject, apparently printouts from the Internet, and these documents were placed in the record. The court stated, "Your objection is noted, you have made your record." The complainant's televised testimony by Skype followed.

We conclude that, given the unusual circumstances of this case, and the prosecutor's good faith, the People made the specific, individualized showing necessary to justify remote video testimony. The Confrontation Clause's general guarantee of face-to-face testimony is not absolute (*Maryland v Craig*, 497 US 836, 844 [1990]). Video testimony is permissible "provided there is an individualized determination that denial of physical, face-to-face confrontation is necessary to further an

important public policy and the reliability of the testimony is otherwise assured" (*People v Wrotten*, 14 NY3d 33, 38-39 [2009] [internal quotation marks omitted]). Moreover, in *Wrotten*, the Court of Appeals recognized that video testimony could be employed in circumstances other than those involving a vulnerable child witness or a witness who was too ill to appear in court, as was the case in *Wrotten* (*id.* at 39-40).

Defendant concedes that the two-way video testimony at issue "preserve[d] the essential safeguards of testimonial reliability" (*id.* at 39). The dispositive question is whether the testimony was " 'necessary to further an important public policy' " (*id.* at 39, quoting *Maryland v Craig*, 497 US at 850), which, in this case, is "the public policy of justly resolving criminal cases" (*id.* at 40), a showing that must be made by clear and convincing evidence (*id.* at 39).

At the outset, we reject defendant's argument that a full-blown evidentiary hearing, featuring sworn testimony, is an absolute prerequisite to making the required showing. Here, moreover, the facts as to the complainant's inability to appear were uncontested.

In this case, the prosecutor represented to the court that he had been in steady contact with the complainant, but on the weekend before the commencement of the trial, a State Department attaché in Cairo told the prosecutor that the United States government was shutting down its embassy at that moment and that the political situation in Egypt was not stable. Further, on the morning of June 26, 2013, prior to the twelfth juror at the trial being sworn, in response to Supreme Court's request for an update on the complainant's travel arrangements from Egypt to New York to testify, the prosecutor reported to the court that he had received unverifiable information that the complainant was onboard an airplane leaving Egypt. The twelfth juror was then sworn and the trial commenced. It was not until later that same day that the prosecutor received the email message from the State Department attaché with the corrected information that the Egyptian authorities had blocked the complainant from boarding the airplane. Upon receiving the email message, the prosecutor spoke to the attaché by telephone. The attaché told the prosecutor he would contact the Egyptian Ministry of Justice about releasing the complainant but that the prosecutor should "not . . . hold [his] breath." That afternoon, the prosecutor reported to Supreme Court about the substance of the email message he had received from the State Department attaché and their subsequent telephone conversation. In response, defense

counsel stated, "I have the highest respect for [the prosecutor], I am sure he has made good faith efforts here," and merely argued that the State Department should have done more to make the complainant available to testify in person. Supreme Court then ruled that the complainant's testimony by live, two-way television was necessary, the People having done all that they could to secure the complainant's personal appearance in court and the prosecutor having made his record as an officer of the court, which Supreme Court correctly accepted.

We find that the prosecutor's representations to the court constituted clear and convincing proof that the complainant was prevented from boarding the plane to the United States on June 26 on the stated ground that he had not fulfilled his military service commitment and that the complainant's in-person appearance had become a practical impossibility at that point.[1] Thus, the People made the required demonstration that the complainant's videoconferencing testimony was necessary to further the public policy of justly resolving this criminal case (*People v Wrotten*, 14 NY3d at 40).

Although the complainant's video testimony was made after Supreme Court's ruling, and therefore could not have been considered by that court in making its ruling, we note that the necessity of the complainant's testimony by videoconferencing is further demonstrated by the complainant's sworn trial testimony, via Skype, that two days after he was prevented from boarding the plane the Egyptian government informed him that his dual citizenship exempted him from military service, but that "[he] ha[d] to get [a] minister of defense decision before [he] [sic] exempt from that, and that takes [a] couple of months at least and he can say yes and he can say no."[2]

The prosecutor's isolated comment in summation regarding the defendant's "high paid hacks," while inappropriate, was immediately stricken from the record by Supreme Court and is

---

1.  At that time, the twelfth juror having already been sworn, jeopardy had already attached. (*See People v Ferguson*, 67 NY2d 383, 388 [1986] ["In a jury trial, once the jury is impaneled and sworn, jeopardy attaches"].)

2.  The Court takes judicial notice, however, pursuant to CPLR 4511 (d), that on July 1, 2013, the date that this testimony was given, the Egyptian Minister of Defense was then-General Abdul-Fattah el-Sisi, who was then leading the government coup and seizing power in Egypt. (*See* Kareem Fahim, *Egypt General Has Country Wondering About Aims*, NY Times, Aug. 2, 2013, available at http://www.nytimes.com/2013/08/03/world/middleeast/egypts-general-sisi.html [accessed Oct. 20, 2016]; David D. Kirkpatrick, *Army Ousts Egypt's President; Morsi Is Taken Into Military Custody*, NY Times, July 3, 2013, available at http://www.nytimes.com/2013/07/04/world/middleeast/egypt.html [accessed Oct. 20, 2016].)

an insufficient basis for a mistrial to have been granted or for reversal of the judgment. Concur—Acosta, J.P., Renwick, Saxe, Feinman and Kahn, JJ.