OPINION OF THE COURT
Robert Hettleman, J.
This decision memorializes the oral decision I made on the record in court on February 27, 2017. For the reasons I gave on the record and the reasons below, the motion to have Monica T., now 21 years old, testify via closed-circuit television (CCTV) and outside the presence of the respondent is granted.
I. Procedural Posture
The Administration for Children’s Services (ACS) filed the instant petition on December 9, 2015, alleging that the respondent, David T.,[1] sexually abused his now-21-year-old daughter, Monica T, when she was under the age of 18. Because Monica was no longer a minor under the law when the case was filed, she is not a subject child in the petition. But ACS alleges that the sexual abuse of Monica amounts to derivative abuse of the subject child, R.T., who is now 12 years old. On December 10, 2015, I appointed counsel to represent Monica because (1) she was identified as the key witness in the case and thus an interested party; (2) it was immediately clear to me, from speaking to Monica and hearing about her from the parties, that Monica suffered from a significant cognitive delay and *822 would benefit from legal advice; and (3) Monica consented to having an attorney appointed for her.
Mr. T. first appeared in court on January 4, 2016, and I appointed counsel to represent him. After January 4, however, he failed to appear in court for all conferences and pretrial matters, and eventually I ordered the trial to begin on September 12, 2016. During the pretrial proceedings, ACS declared that they intended to call Monica as a witness, and Monica and her attorney indicated that she was prepared to testify. On September 12, 2016, Mr. T. appeared in court for the first time since January 4. ACS and Monica’s attorney both stated that while Monica had been prepared to testify in the absence of her father, she was made severely uncomfortable by his appearance in court and did not wish to testify at that time. I adjourned the trial in order to permit discovery and motion practice relating to numerous issues in the case, and Monica’s attorney later filed this motion seeking testimony via CCTV, outside of the presence of her father.
II. The Motion for CCTV
The motion by Monica’s attorney argues that (1) forcing Monica to testify in the same room as her father would have a detrimental effect on her and possibly cause her significant psychological trauma; (2) Monica is cognitively impaired, and this impairment increases her vulnerability as a witness; and (3) Monica is extremely hesitant to speak about the abuse at all, and thus testifying in the room with her father would impede her ability to testify openly and truthfully. Notably, the motion did not seek to exclude Mr. T. from the courtroom or for in camera testimony, but rather to have Monica testify via CCTV. In this way, Monica would be visible and audible to the court and counsel throughout her testimony, and she would be subject to contemporaneous cross-examination.
In support of the motion, Monica’s attorney submitted two attachments. The first is an “affidavit,” dated February 26, 2016, and signed by a psychologist named Dr. Judith Weber. The affidavit indicates that Dr. Weber examined Monica that day in the context of a “guardianship interview.” Dr. Weber appears to have reviewed cognitive and psychological assessments in order to determine if Monica could make her own decisions about health care matters. No other context is provided for the notes within that affidavit, but Dr. Weber concluded that Monica was not fit to make those decisions. The second af *823 fidavit is from Ann Sydor, a licensed clinical social worker and an experienced forensic social worker who has worked with the court system on many occasions. Ms. Sydor was retained by Monica’s attorney specifically for the purpose of evaluating Monica for this application for CCTV. Ms. Sydor interviewed Monica in person and on the telephone, and she described that Monica has great difficulty discussing the alleged sexual abuse by her father, possesses very limited coping skills, and has fears of retaliation if she were to testify, as she has been warned not to testify by members of both sides of the family. Monica worried that if she were to testify, her family might get mad at her or disown her. Moreover, Monica specifically described that her father has threatened Monica’s mother, and that Monica fears that Mr. T. will hurt Monica, her mother, or her sister if she were to testify. Finally, Monica stated that her father’s demeanor and presence in the room would be frightening to her. Based upon all of this information, Ms. Sydor opined that (1) Monica should not be forced to testify at all; (2) if Monica is required to testify, being in the same room as her father will heighten her distress as well as cause her fear and anxiety; and (3) if Monica has to testify in the same room as her abuser, the “potential for irreparable psychological damage exists.”
ACS, the attorney for the subject child R., and the mother’s attorney all supported the application for CCTV. Mr. T. and his attorney opposed the motion in writing and in arguments in court.[2]
III. Applicable Law
A. CCTV in Criminal Cases
An accused has the fundamental right to be present at a trial and to confront his or her accusers. But case law makes clear that this right is not absolute, even in criminal cases. In Maryland v Craig (497 US 836 [1990]), the United States Supreme Court examined a Maryland statute which permitted child witnesses to testify via CCTV if the trial court found that the child was likely to suffer serious emotional distress if required to testify in the physical presence of the defendant. {Id. at 841.) In its decision, the Court upheld the Maryland statute because it advanced a “compelling” state public policy *824 interest “sufficiently important to outweigh, at least in some cases, a defendant’s right to face his or her accusers in court.” (Id. at 852-853.) The Court concluded that due process is satisfied where a court finds “an adequate showing of necessity” and takes steps to preserve the accuracy and reliability of a child’s testimony by ensuring that the child testifies competently, under oath, and is subject to contemporaneous cross-examination with a full opportunity for the judge, jury, and defendant to observe the demeanor of the child. (Id. at 851, 855.) They went on to articulate a balancing test for considering when CCTV or other alternative forms of testimony can be permitted: a trial court must weigh the benefits of protecting the victim from undue trauma against the defendant’s confrontation rights, and this is to be decided on a case-by-case basis. (Id. at 855.)
In New York State, there is a statute similar to Maryland’s. Criminal Procedure Law § 65.20 (2) specifically authorizes the use of CCTV for child witnesses in certain sex crime cases upon a determination that the child is a “vulnerable” witness, based on “clear and convincing evidence that the child witness would suffer serious mental or emotional harm that would substantially impair the child witness’ ability to communicate with the finder of fact without the use of live, two-way closed-circuit television.” This law has been used and upheld regularly. (See e.g. People v Barreto-Mejia, 101 AD3d 1040 [2d Dept 2012].)
Importantly, nothing in Craig limits its rationale or balancing of interests only to cases involving child witnesses. (See People v Wrotten, 14 NY3d 33, 39 [2009].) In Wrotten, an elderly victim in a criminal case moved across the country to California shortly after he was assaulted and was too ill to return to New York for the trial. The Court of Appeals upheld the trial court’s decision to allow the victim to testify via CCTV after finding that he was unable to travel because of his age and poor health. The Court went on to hold that the defendant’s confrontation right was not violated because the primary concern is “ensuring] the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.” (Id., citing Craig, 497 US at 845.) Every other element of the confrontation right was preserved, including testimony under oath, the opportunity for cross-examination, and all respective parties’ ability to view the witness’ demeanor as he testified. *825 (Id. at 39.) More recently, the First Department upheld the use of CCTV for an adult witness in a criminal case. (See People v Giurdanella, 144 AD3d 479 [1st Dept 2016].) In that case, the Appellate Division agreed that the prosecution had made the requisite showing of necessity for CCTV because the victim had been prevented from boarding a plane from Egypt to the United States. Egyptian immigration officials told the witness that he had not fulfilled his military service and thus could not leave the country, thus rendering the victim’s in-person testimony a “practical impossibility.” (Id. at 482.) Likewise, other jurisdictions have used the Craig analysis to permit ill and out-of-state witnesses to testify by CCTV. (See e.g. Horn v Quarterman, 508 F3d 306, 317-318 [5th Cir 2007] [witness too ill to travel]; United States v Benson, 79 Fed Appx 813 [6th Cir 2003] [same]; United States v Gigante, 166 F3d 75 [2d Cir 1999] [same].) Indeed, the Circuit Courts in Gigante and Benson went a step further, noting that the Craig test was unnecessary for applications for CCTV, since CCTV fully preserves the accused’s right to face-to-face, contemporaneous confrontation. (Gigante, 166 F3d at 81; Benson, 79 Fed Appx at 820-821.)
Moreover, the State of Michigan has extended the application of Craig beyond witnesses who are ill or unable to travel. In People v Burton (219 Mich App 278, 556 NW2d 201 [1996]), the Michigan Court of Appeals upheld the use of CCTV for an adult witness in a violent assault case. The witness was 36 years old, “had dyslexia and long-standing emotional problems [,] and . . . was the emotional equivalent of a five-year-old.” (219 Mich App at 284, 556 NW2d at 204.) Notably, it appears that these conditions were the result of the defendant’s vicious attack on her. At trial, the victim began to testify in open court but started struggling to answer questions. The prosecution then sought to have the testimony continue via CCTV, and the trial court agreed after holding a hearing on that application. The Court of Appeals employed the Craig balancing test and found that “developmentally disabled persons are, when appropriate, entitled to preferential treatment when testifying in sexual abuse cases.” (219 Mich App at 288, 556 NW2d at 205.) They noted that if the victim were forced to testify in open court, she might not be able to do so, and that the defendant’s confrontation rights were sufficiently preserved by CCTV. (219 Mich App at 286-290, 556 NW2d at 205-206.)
A related limitation to the right to cross-examine in criminal and family court cases is found in the forfeiture doctrine. In *826 People v Geraci, the New York State Court of Appeals upheld the notion that a witness’ prior, out-of-court statements are admissible at trial where it can be shown that the accused procured the unavailability of that witness through violence, threats, or chicanery:
“While the principle is often characterized as involving ‘waiver by misconduct,’ it is more realistically described as a forfeiture dictated by sound public policy. Indeed, the courts that have applied the rule have frequently justified it by invoking the maxim that the law will not allow a person to take advantage of his own wrong. Additionally, the rule is invoked to [protect] the integrity of the adversary process by deterring litigants from acting on strong incentives to prevent the testimony of an adverse witness. Like all of the other courts that have adopted and applied the rule, we conclude that out-of-court statements, including Grand Jury testimony, may be admitted as direct evidence where the witness is unavailable to testify at trial and the proof establishes that the witness’s unavailability was procured by misconduct on the part of the defendant.” (People v Geraci, 85 NY2d 359, 366 [1995] [some internal quotation marks and citations omitted].)
Since the decision in Geraci, New York courts have expanded the doctrine to include instances even where no violence, threats or chicanery have been used: “in this state we define misconduct much more broadly to include intimidation and bribery . . . and the use of a relationship to improperly procure a witness’s silence.” (People v Encarnacion, 87 AD3d 81, 86 [1st Dept 2011] [citations omitted]; see also People v Jernigan, 41 AD3d 331, 332-333 [1st Dept 2007] [forfeiture found where defendant wrongfully made use of his long-term relationship with the witness to encourage her unavailability].) In other words, forfeiture can be found even where a defendant does not nefariously coerce a witness not to testify; rather, forfeiture can occur from a defendant using his relationship with the victim or witness in a manner that makes the witness not want to testify. Of course, this doctrine applies to intentional efforts made to discourage the witness from testifying. But the Michigan Court of Appeals decision in Burton noted that the victim’s severe disability was primarily caused by the alleged attack on her by the defendant. Arguably, then, the Craig test might properly factor in the accused’s actions during the alleged crime itself as *827 part of the analysis. But even if that is not the case, the forfeiture doctrine remains another example of limitations placed on the right to face-to-face cross-examination.
All of these lines of cases reinforce the notion that the fundamental constitutional right to confrontation of one’s accusers can be abridged under certain compelling circumstances, even in criminal cases.
B. Family Court Cases Involving Children
In the Family Court context, it is well established in New York that a respondent does not have an absolute right to be present at all stages of a Family Court Act article 10 proceeding. (See Matter of Lindsey BB. [Ruth BB.], 70 AD3d 1205, 1207 [3d Dept 2010].) “As neglect proceedings are civil in nature, the usual rules of criminal evidence do not apply . . . and [t]he Family Court must balance the due process rights of an article 10 respondent with the mental and emotional well being of the child.” (Matter of Arlenys B. [Aneudes B.], 70 AD3d 598, 599 [1st Dept 2010] [internal quotation marks omitted], quoting Matter of Nicole V., 71 NY2d 112, 117 [1987], and Matter of Q.-L.H., 27 AD3d 738, 739 [2d Dept 2006].)
While there is no statutory provision for CCTV in the Family Court Act, decisions from the trial and appellate courts routinely allow some infringement upon a respondent’s right to be present in the courtroom. CCTV has been authorized where it was shown that a child might likely suffer from trauma and/or that the truth-seeking function might be inhibited if the child were forced to testify in the same room with the respondent. (See e.g. Matter of Giannis F. [Vilma C.—Manny M.], 95 AD3d 618 [1st Dept 2012].) In fact, appellate courts have permitted the total exclusion of the respondent from the courtroom during a child’s testimony (see Matter of Falon P., 250 AD2d 497 [1st Dept 1998] [exclusion appropriate where it was necessary to safeguard the child’s well-being and did not function to deprive respondent of due process]; Q.-L.H., 27 AD3d at 739 [same]), as well as examining the child witness in camera, wholly out of the respondent’s presence. (Matter of Moona C. [Charlotte K.], 107 AD3d 466 [1st Dept 2013] [in camera appropriately balanced respondent’s due process rights with the well-being of the child]; Matter of Hadja B., 302 AD2d 226 [1st Dept 2003] [respondent’s attorney present for the in camera proceeding, and given time to discuss the child’s testimony with respondent before cross-examining the child].)
"When seeking an order for CCTV or a similar remedy in an article 10 case, the movant has the burden of proving that the *828 child would, in fact, be at risk of serious emotional harm if forced to testify in open court. It is not enough that the witness would merely be nervous or suffer some trauma from having to testify in general, but rather that testifying in the same room as the respondent would likely cause the harm. (See Matter of Kyanna T, 19 Misc 3d 1114[A], 2007 NY Slip Op 52547[U] [Fam Ct, Kings County 2007], citing People v Henderson, 156 AD2d 92 [2d Dept 1990]; see also Craig, 497 US at 856.)
In order to satisfy its burden of proof, the movant may present the testimony or an affidavit of a qualified expert establishing a risk of trauma to the particular child or that the child will not be able to freely testify if the respondent is present. (Giannis F., 95 AD3d at 618-619; Moona C., 107 AD3d 466.) Notably, there is no specific formula for what or how much information must be provided to the court making this determination. Nor is there any requirement that the information or affidavit come from a doctor, as opposed to a social worker or other treatment provider, and the court need not hold an evidentiary hearing on the motion if the moving papers provide the court sufficient information upon which to base the decision. (Giannis F,, 95 AD3d at 618-619 [affidavit of social worker sufficient]; Matter of Moona C. [Charlotte K.], 107 AD3d 466 [1st Dept 2013] [same].)
C. Adult Witnesses in Family Court
From the analysis above, there are two different situations relevant to this case where courts have deemed it appropriate to limit an accused’s right to confrontation: (1) witnesses who are unavailable to testify in the courtroom, and (2) witnesses who are available but should not be forced to testify in the open courtroom. In addressing Monica’s motion in this case, the issue is whether and how to apply these doctrines to a child victim who is now an adult. The Family Court Act and the case law in article 10 make clear that protection of children and victims is the paramount concern of these proceedings. Trial courts in Family Court are given wide discretion when making evidentiary determinations, given the sensitive nature of the subject matters at hand: “[tjhe sociolegal nature of the problems with which Family Court Judges deal requires the exercise of considerable discretion.” (Matter of Cecilia R., 36 NY2d 317, 322 [1975].) Even if Monica were an adult with no disability whatsoever, Craig and its progeny make plain that certain circumstances can justify limiting a respondent’s right to be in the same room as a testifying witness.
*829 IV. Monica is Sufficiently Vulnerable to Justify Testimony by CCTV in This Case
As noted above, in support of the motion for CCTV, Monica’s attorney submitted two exhibits. The first, from Dr. Weber, suffers from a number of flaws, including an apparently missing page and a lack of any context or foundation supporting its opinion. But more importantly, I do not see how this document is relevant in any way to the issue at hand. This interview was conducted for a wholly different purpose and in February of 2016. It offers no insight as to Monica’s current state of mind, and accordingly, I am not considering it in any way for purposes of this motion.
On the other hand, I find that the second affidavit, from Ms. Sydor, is sufficient to establish that (1) Monica is particularly vulnerable in this case; (2) she is likely to suffer significant emotional trauma if she is forced to testify in the same room as her father; and (3) testifying in the same room as her father will impede Monica’s ability to be open and truthful in her testimony. Ms. Sydor described Monica as strongly cognitively and socially impaired, as well as wholly dependent on her mother for her most basic needs. She further stated that Monica has a very hard time discussing the alleged sexual abuse by her father, has very limited coping skills, is not currently in any counseling, and does not wish to talk or testify about the abuse at all. In addition, Ms. Sydor wrote that Monica has fears of retaliation if she were to testify, as she has been warned not to testify by family members from both sides of her family. Moreover, Monica fears that testifying might get her family mad at her or even to disown her. And finally, and most relevant to this motion, Monica fears Mr. T. himself. Monica expressed that her father has threatened her mother, and she fears that he will hurt Monica, her mother, or her sister if she were to testify. And Monica specially stated that her father’s demeanor and presence in the room would be frightening to her. Ms. Sydor opined that being in the room with him will heighten her distress and cause her fear and anxiety, and that the “potential for irreparable psychological damage exists” if Monica has to testify in the same room as her alleged abuser.
Of course, Ms. Sydor’s conclusion or recommendation is that Monica should not be forced to testify at all. And some of what Ms. Sydor wrote in her affidavit might be attributable to general anxiety about testifying in any courtroom about any seri *830 ous matter. But I find that there is also enough particularity in the affidavit to raise the concern that testifying in the same room as her father, the one she alleges abused her, would likely cause severe anxiety, fear, and trauma to Monica, as well as inhibit her from being able to testify truthfully. Monica is now 21 years old, but she requires full-time care and support from her mother and is not able to live independently. And CCTV has routinely been found to be appropriate in cases of alleged intrafamilial sexual abuse of a child.
I note one other factor that is not contained in any of the motion papers. As described, Monica and her attorney were ready, willing, and able to testify on September 12, 2016, under the assumption that Mr. T. was not going to be present. This suggests that general nervousness about court or even difficulty talking about abuse would not have prevented Monica from testifying. However, when Mr. T. appeared in court that day, Monica and her attorney said she was no longer prepared to go forward. Under all of the circumstances of this case, it is reasonable to infer that Mr. T.’s presence was a significant, perhaps determinative, factor accounting for the change in Monica’s position. Under the applicable case law, I do factor this into my decision. (See Burton, 219 Mich App 278, 556 NW2d 201 [witness began testimony in open court but could not continue].) However, for the appellate record, I note that even without that observation and inference, Ms. Sydor’s affidavit, on its own, is sufficient evidence to warrant the testimony by CCTV.
Finally, in considering any limitation of Mr. T.’s right to confrontation of his accuser, I note that the CCTV technology in the Bronx Family Court building is excellent. The picture and sound through the televisions are clear, and everyone in both the courtroom and the witness room are able to see and hear the proceedings without obstruction. Mr. T. and his attorney will have the full ability to see, hear, and contemporaneously cross-examine Monica at the trial. Accordingly, CCTV in this instance is, at most, a very minor impingement on Mr. T.’s rights. (Cf. Gigante, 166 F3d at 81 [discussing that Craig balancing is not required at all for CCTV, since CCTV preserved face-to-face confrontation]; Benson, 79 Fed Appx at 820-821 [same].)
V Conclusion
For all of the reasons described above, the motion to permit Monica to testify via CCTV is granted. I find that forcing *831 Monica to testify in the presence of her alleged abuser is very likely to cause her emotional and psychological harm; that allowing her to testify outside of the physical presence of the respondent will enhance her ability to testify accurately, fully and without inhibition; and that the procedure of two-way video conference with contemporaneous cross-examination by the respondent and his attorney will sufficiently preserve his due process rights in this case.

. ACS also alleged abuse and neglect by the children’s mother, Maria O., but her case was adjourned in contemplation of dismissal on September 12, 2016. Accordingly, the pending trial relates only to the charges against Mr. T.

. In addition to opposing the motion for CCTV, Mr. T. and his attorney filed several cross motions which I decided on the record and will not address here.