595 N.W.2d 207 (1999)
STATE of Minnesota, Respondent,
v.
Jeffrey Edward SEWELL, Appellant.
No. C9-98-1652.
Court of Appeals of Minnesota.
June 1, 1999.
Review Denied August 25, 1999.[*]
*209 Mike Hatch, Attorney General, Nancy Bode, Assistant Attorney General, St. Paul, Gregory D. Larson, Hubbard County Attorney, Park Rapids, for respondent.
Frederic Bruno, Timothy R. Anderson, Frederic Bruno & Associates, Minneapolis, for appellant.
Considered and decided by CRIPPEN, Presiding Judge, AMUNDSON, Judge, and SHUMAKER, Judge.

OPINION
SHUMAKER, Judge.
Appellant Jeffrey Edward Sewell challenges his conviction for second-degree felony murder on grounds that the trial court's allowance of testimony through Interactive Television (ITV) impaired his constitutional right of confrontation and prosecutorial misconduct during final arguments deprived him of a fair trial. We affirm.

FACTS

The Death of Daniel Santa Cruz
On September 5, 1997, law enforcement officers found the badly decomposed body of Daniel Santa Cruz partially buried in the woods on appellant's father's tree farm in Hubbard County, Minnesota. Santa Cruz had multiple stab wounds in his chest; his head had been severed, his left arm shattered, and the bones in the left side of his face fragmented. Some of the injuries were consistent with blows from the blade and the handle of a shovel. Officers found a shovel with Santa Cruz's blood on it in a tool shed on the farm. The blade matched the configuration of some of Santa Cruz's wounds.
Santa Cruz was last seen alive on July 25 and 26, 1997. His first wife, Debra, saw him at a bus depot on July 25 and spoke *210 with him on the telephone later that day. Santa Cruz told her that he was going to the Sewell tree farm to get his social security check. Edward Sewell, appellant's father, owned the farm, and Santa Cruz was married to Edward's daughter.
At about 9:30 p.m. on July 25, Santa Cruz's friend, Susan Rother, called the Sewell farm and first spoke with appellant, who was staying there alone while his father was out of town. She next spoke with Santa Cruz. Santa Cruz said that he was going to pick up his check and return to Minneapolis.
During the evening of July 25 and apparently into the morning of July 26, appellant and Santa Cruz drank heavily and used Valium.
Early on the morning of July 26, a friend of appellant called the farm and spoke to appellant, who sounded drunk. Rother called Santa Cruz at the farm at noon that day. In the mid-afternoon appellant and Santa Cruz walked six miles into the town of Nevis to buy more alcohol. Because both men appeared inebriated, the liquor store clerk sold them only one six-pack of beer.
On their way back to the tree farm, they stopped at the home of Jeanette Wambolt and her 25-year-old son Jason. Jason did not want them on the premises and he offered to drive them home in his pickup truck. He told the men to get into the back of the pickup. Santa Cruz did so but appellant got into the cab. Jeanette Wambolt, concerned for her son's safety, followed the pickup surreptitiously in her car.
During the trip to the tree farm, appellant told Jason that Santa Cruz was trying to kidnap him and that he had already kidnapped his sister. Appellant asked, "Can you help me get rid of him?" and proposed that Jason drive over a bump in the tree farm driveway and cause Santa Cruz to fall out of the truck. Appellant then proposed that Jason could run over Santa Cruz with the pickup. Appellant then said, "There is a pipe at the end of my driveway. If you stop by that, I'll take care of it."
Jason drove into the driveway and stopped near a barrel with a shovel in it. The men got out of the pickup. As Jason slowly backed out of the driveway, he saw appellant swing the shovel like a baseball bat and hit Santa Cruz. The blade flew off. Appellant then raised the shovel handle over his head and again hit Santa Cruz. Appellant next jammed the handle into Santa Cruz's midsection. Frightened, Jason left rapidly and called the sheriff. The deputy who answered did not treat the call seriously and did nothing more than make one unanswered telephone call to the tree farm.

Statements to William Hurt
Rother filed a missing person report on July 30, 1997. Investigating officers discovered Santa Cruz's body and arrested appellant. While appellant was being held in jail, he shared a cell with William Hurt, a resident of Arizona. Hurt had six prior felony convictions and was being held in lieu of $40,000 bail on a charge of first-degree criminal sexual conduct. Hurt told law enforcement authorities that appellant had admitted killing Santa Cruz.
The case was tried twice. The first trial ended in a mistrial because the jury was unable to reach a unanimous verdict.
Hurt testified for the state in both trials. In the first trial, he was physically present in the courtroom. He testified that appellant confessed to him that he had beaten a relative with a shovel and had dragged him into the woods. Appellant said the relative was a worthless drug addict. Hurt also testified that appellant said he would use "blackouts" as a defense.
Prior to the first trial, Hurt had broken his neck and needed surgery. He postponed the operation for the trial. After his testimony, he went home to Arizona for the surgery.
When the case was called for the retrial, Hurt was in Arizona and was under a medical restriction not to travel. The trial *211 court decided that it would not permit the reading of Hurt's prior testimony but suggested that either a videotaped deposition or interactive television (ITV) would be suitable options for presenting Hurt's testimony. Appellant objected to both procedures but involuntarily agreed to ITV because the cost of a deposition would be prohibitive. Hurt then testified at the retrial through ITV, which produced a live transmission of video and audio into the courtroom.[1] Hurt related appellant's confession.

Final Arguments
During his final argument, the prosecutor noted that appellant had been indicted by a grand jury. The court sustained a defense objection to the reference. The prosecutor argued that a "cry went out" but was ignored. It was "a cry for justice, a cry that I hope you will hear in the jury room during the course of your deliberations." At one point in his argument, the prosecutor stated:
[T]he constitution and the laws of Minnesota are written in courtrooms like this every day. Not by the attorneys, not by the judges, not by the legislators in St. Paul, but by you, ladies and gentlemen. You write the law. You enforce the law in courtrooms throughout this state, throughout this country. You, the citizens, determine the law.
Finally, the prosecutor suggested possible motives for the killing of Santa Cruz. Appellant did not object to any of the statements other than the grand jury reference.
At the conclusion of the trial, the jury found appellant guilty of felony murder in the second degree. The trial court denied defense motions for a new trial.

ISSUES
1. Did the admission of trial testimony by Interactive Television (ITV) violate appellant's Confrontation Clause rights found in the Sixth Amendment to the U.S. Const. or Minn. Const. Art. I, § 6 when the witness was unavailable to testify?
2. Did respondent prejudice appellant by committing prosecutorial misconduct in its closing argument?

ANALYSIS

1. The Use of Interactive Television
Appellant contends that the use of ITV for the presentation of the testimony of William Hurt violated his constitutional right to be confronted by witnesses against him. Minn. Const. art 1 § 6; U.S. Const., amend. VI. We review constitutional issues de novo. Frost-Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n, 358 N.W.2d 639, 642 (Minn.1984).
The retrial of this case began April 29, 1998. On May 7, 1998, Hurt underwent neck surgery in Arizona. By affidavit and through telephone contact, Hurt's physician informed the court that Hurt would risk paralysis if he traveled to Minnesota, that he would not be able to travel for three months, and that he was scheduled for additional surgery in two weeks. Although the state made no attempt to subpoena Hurt, the trial court ruled that, because of Hurt's serious medical condition, he was not available to testify in Minnesota. Appellant does not contest this determination.
Appellant appears to raise three issues regarding the use of ITV in this case. He suggests that the trial court had no authority to permit the use of ITV. He argues that the technical transmission of the testimony was distorted. And he appears to contend that the use of ITV to present important testimony in a criminal case per se violates the Confrontation Clause.

Authority
The trial court viewed the use of ITV as an extension of the rules authorizing the use of depositions in criminal cases. Minn. R.Crim. P. 21.01 and 21.06, subd. 1. *212 Rule 21.01 authorizes the taking of a deposition when there is a reasonable probability that the testimony of an unavailable witness will be used at a trial. Rule 21.06, subd. 1, provides:
At the trial * * * a part or all of a deposition, so far as otherwise admissible under the rules of evidence, may be used as substantive evidence if it appears: (a) that the witness is * * * unable to be present or to testify at the trial * * * because of then existing physical * * * illness or infirmity * * *.
Minn. R.Crim. P. 21.04, subd. 2, provides that the deposition shall be taken stenographically "unless the court orders otherwise." The Committee Comment to Rule 21 states: "Rule 21.04, subd. 2 providing for recording a deposition by other than stenographic means if the court so orders follows F.R. Civ. P. 30(b)(4)." The federal rule provides that a deposition "may be recorded by sound, sound-and-visual, or stenographic means * * *." Fed.R.Civ.P. 30(b)(2). ITV is not a deposition, but it is a "sound-and-visual" means of presenting testimony and is the functional equivalent of a videotaped deposition within the authority of rule 21.

Technical Quality
Appellant argues that the transmission of Hurt's testimony through ITV was distorted in both sound and image. He contends that the distortions precluded effective cross-examination and impaired the jury's ability to consider Hurt's demeanor in assessing his credibility.
Hurt's image on the screen in the courtroom was sufficiently clear to allow the jury to view him continuously and in reasonably precise detail throughout his testimony. The audio and the visual were synchronized and there was no sound distortion. There was occasional transitory and insignificant static-type interference with the video image. There was also a very slight time delay between questions and answers but this did not appear problematic. Appellant objected only once during Hurt's testimony and, presumably because of the time delay, Hurt answered before the court ruled. The court sustained the objection and instructed the jury to disregard Hurt's answer. This situation occurs even with live, in-court testimony; it cannot be said to be unique to ITV technology. There was no technical deficiency or distortion in the transmission of Hurt's testimony that could reasonably be viewed as having impaired the cross-examination of Hurt or the jury's observation of his demeanor. Thus, we reject appellant's assertion that the quality of the ITV transmission deprived him of his right of confrontation.

ITV and the Right of Confrontation
The United States Supreme Court has held that "the Confrontation Clause reflects a preference for face-to-face confrontation at trial * * *." Maryland v. Craig, 497 U.S. 836, 849, 110 S.Ct. 3157, 3165, 111 L.Ed.2d 666 (1990) (citations omitted). But a preference is not tantamount to an absolute right. Id. at 849-50, 110 S.Ct. at 3165-66. Sometimes the preference must give way to the practical realities and necessities of the case. See Harrell v. State of Florida, 709 So.2d 1364, 1368 (1998) (permitting foreign tourists assaulted and robbed while visiting Florida to testify from Argentina by satellite transmission did not violate defendant's right of confrontation).
Once the unavailability of the witness and the necessity of his testimony have been demonstrated, the focus shifts to the reliability of the testimony. Id. See also Craig, 497 U.S. at 850, 110 S.Ct. at 3166. Reliability is ascertained by examining four features:
The salutary effects of face-to-face confrontation include 1) the giving of testimony under oath; 2) the opportunity for cross-examination; 3) the ability of the fact-finder to observe demeanor evidence; and 4) the reduced risk that a witness will wrongfully implicate an innocent *213 defendant when testifying in his presence.
United States v. Gigante, 166 F.3d 75, 80 (2nd Cir.1999) (holding two-way closed circuit television presentation of testimony of former Mafia member in the Federal Witness Protection Program did not violate defendant's confrontation right in RICO prosecution). Hurt's testimony was given under oath. He was sworn twice, first on location in Arizona and second during the transmission to the courtroom. The judge administered the second oath in the presence of the jury.
Defense counsel not only had an unfettered opportunity to cross-examine Hurt, he did so extensively and effectively. Having heard, and cross-examined, Hurt's prior testimony, counsel was able to explore inconsistent statements. He brought out the fact that Hurt waited several weeks before revealing appellant's confession to law enforcement officers, implying that there was collusion between Hurt and the authorities. He confronted Hurt with his criminal background. The jury saw and heard the cross-examination and Hurt's responses. Furthermore, the United States Supreme Court has held that previously cross-examined trial testimony is "generally immune from subsequent confrontation attack." Ohio v. Roberts, 448 U.S. 56, 72-73, 100 S.Ct. 2531, 2542, 65 L.Ed.2d 597 (1980).
Appellant contends that he could not use "`body language' confrontational techniques, which are common and often dramatic cross-examination tools." He fails to specify, however, what body language he was deprived of employing and how its use might have made cross-examination more effective.
Appellant complains that the jury was deprived of demeanor clues, "such as immediacy of response, subtle eye movements, breathing, perspiration, and face flushing." He also notes that Hurt's left hand and part of his left arm are blocked by an insert of the courtroom on the screen. The image presented was a seated frontal view that was not appreciably more obstructed than it would have been had Hurt testified from a typical courtroom witness stand. The jury saw and heard Hurt as he was. Testifying in a full neck brace, with 121 stitches in his throat, and a screw in his cervical spine, Hurt's demeanor was particularly passive. Yet the jury could see his face with reasonable clarity and could hear not only what he said but also how he said it. We believe that the jury had a reasonable opportunity to observe and assess Hurt's demeanor during his testimony.
Finally, Hurt knew that he was testifying in appellant's "presence" in the sense that Hurt could see appellant and appellant could see and hear Hurt.
We find no constitutional infirmity in the use of ITV for the presentation of the testimony of an unavailable witness in this case.

2. Prosecutor's Final Argument
Appellant alleges that the prosecutor was guilty of prejudicial misconduct in his final argument. The trial court disagreed.
On appeal, the trial court's determination should be reversed only if the misconduct
viewed in the light of the whole record, appears to be inexcusable and so serious and prejudicial that defendant's right to a fair trial was denied.
State v. Wahlberg, 296 N.W.2d 408, 420 (Minn.1980). The trial court is in the best position to appraise the effect of the misconduct on the trial. State v. Scruggs, 421 N.W.2d 707, 716 (Minn.1988).
The trial court sustained appellant's objection to the prosecutor's mention of the grand jury indictment. Because the jury already knew of the indictment from the court's own preliminary charge, it is unlikely that this solitary reference had any effect on the jury's decision. State v. Walsh, 495 N.W.2d 602, 607 (Minn.1993) *214 (solitary comments cannot be taken out of context and used as a basis for reversal).
Some of the prosecutor's statements were designed to engender sympathy for Santa Cruz and were therefore improper. But the trial court gave an appropriate instruction to offset the impropriety:
You shall not permit bias, prejudice or sympathy to affect your judgment. You should base your verdict entirely upon the evidence which has been received in court, and upon the law which I give you in these instructions.
The prosecutor's suggestion to the jury that "You write the law. * * * You, the citizens, determine the law," was also improper but was ameliorated by the trial court's instruction that the jury's duty was to follow the law as the court gave it whether the jury agreed with the law or not.
The trial court's instructions, coupled with evidence strongly supporting the verdict, give assurance that the prosecutor's remarks did not prejudice appellant or deny him a fair trial. See also State v. Caron, 300 Minn. 123, 127-28, 218 N.W.2d 197, 200 (1974) (for less serious misconduct, the review standard is that of harmless error).
Moreover, appellant neither objected to nor requested a cautionary instruction regarding most of the statements he challenges. The failure to object or to seek a cautionary instruction ordinarily waives the right to have the issue considered on appeal. State v. Parker, 353 N.W.2d 122, 127 (Minn.1984). Appellant has an affirmative duty to ask for a cautionary instruction because a properly worded instruction can often ameliorate the effect of an improper argument. State v. Brown, 348 N.W.2d 743, 747 (Minn.1984). Only when the misconduct is unduly prejudicial will relief be granted absent a trial objection or request for instruction. State v. Whittaker, 568 N.W.2d 440, 450 (Minn.1997).

DECISION
The witness's testimony by ITV did not violate appellant's Confrontation Clause rights under the Sixth Amendment to the United States Constitution or Article I, Section 6 of the Minnesota Constitution when the use of ITV was an extension of Minn. R.Crim. P. 21. The statements made by the prosecutor during closing argument did not prejudice appellant or deny him a fair trial.
Affirmed.
NOTES
[*] BLATZ, C.J., took no part in the consideration or decision of this case.
[1] The judges on the appeal panel viewed a videotape made of Hurt's ITV testimony.