SUPERIOR COURT 
 
 COMMONWEALTH V. HIPOLITO MASA, JR.

 
 Docket:
 1981CR0307
 
 
 Dates:
 August 10, 2020
 
 
 Present:
 /s/Kenneth W. Salinger Justice of the Superior Court
 
 
 County:
 MIDDLESEX, ss.
 

 
 Keywords:
 MEMORANDUM, FINDINGS, AND ORDER OVERRULING DEFENDANT'S OBJECTION TO CONDUCTING AN EVIDENTIARY SUPPRESSION HEARING BY VIDEO CONFERENCE
 
 

             Hipolito Masa, Jr., was indicted for armed robbery, witness intimidation, breaking and entering in the daytime with the intent to commit a felony, and assault and battery with a dangerous weapon. Mr. Masa has moved to suppress statements he allegedly made to the police and any tangible evidence seized as a result. An evidentiary hearing is scheduled for tomorrow, Tuesday, August 11, 2020. The Court has informed the parties that it will conduct this hearing by remote video conference using the Zoom platform.
            This morning Mr. Masa filed a written objection to conducting this hearing by a Zoom video conference. Masa states that, because of the ongoing COVID-19 pandemic, conducting such a hearing in person poses "a grave risk to all participants." But he contends that conducting the hearing by a remote video platform would violate his constitutional rights to be present for the hearing, to confront the witnesses against him and present witnesses in his favor, and to a public hearing, as well as the public's right to attend the proceeding.
            The Court agrees with Mr. Masa that, during the current public health emergency, conducting this hearing with all participants physically present in the same courtroom poses an unnecessary risk to everyone involved.
            But it further finds that: (i) under these unusual circumstances, it is necessary to deny Defendant's right to face and examine witnesses in the same physical space in order to protect the health and safety of all participants; (ii) conducting this hearing using the Zoom video conference platform, with the safeguards discussed below, will adequately protect Mr. Masa's constitutional right of confrontation and reasonably assure the reliability of all testimony consistent with his due process rights; and (iii) allowing full public access to the Zoom proceeding satisfies constitutional requirements.
                                                            -1-
            The Court will therefore overrule Defendant's written objection to conducting this evidentiary suppression hearing by Zoom video conference. Mr. Masa's objection is noted and his rights of appeal are preserved.
            1. Legal Background. A criminal defendant has "a constitutional right to be present" during an evidentiary hearing on a motion to suppress evidence, as such a hearing is a critical stage of the proceedings. Commonwealth v. Campbell, 83 Mass. App. Ct. 368, 372 (2013). This right "derives from the confrontation clause of the Sixth Amendment to the United States Constitution, the due process clause of the Fourteenth Amendment to the United States Constitution, and art. 12 of the Massachusetts Declaration of Rights." Id. quoting Robinson v. Commonwealth, 445 Mass. 280, 285 (2005).
            Whether a defendant has the absolute right to be physically present in the same location as each testifying witness, or whether it is sufficient —where necessary —for witnesses to testify and be subject to cross-examination through a two-way video bridge of some sort, has been the subject of court decisions throughout the country. The key legal standards, and lines of cases holding that those standards can be met when a witness is examined by remote video connection, are summarized below.
            1.1. Right of Confrontation. At trial, art. 12 generally requires that a defendant be allowed to meet and confront the witnesses against him face to face. See Commonwealth v. Amirault, 424 Mass. 618, 628-629 (1997).
            However, "the right to confront witnesses is not absolute." Commonwealth v. Fontanez, 482 Mass. 22, 32 (2019) (art. 12), quoting Amirault, 424 Mass. at 633; accord Maryland v. Craig, 497 U.S. 836, 849-850 (1990) (Sixth Amendment). "It 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.' " Fontanez, supra, quoting Commonwealth v. Francis, 375 Mass. 211, 214 (1978), quoting in turn Chambers v. Mississippi, 410 U.S. 284, 295 (1973).
            "[A] defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." Maryland v. Craig, supra.
            Proximate physical presence is not the essence of confronting a witness; what matters most is the ability of a defendant to test and challenge a witness's testimony through cross-examination.
                                                            - 2 -
The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination. The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers.
Commonwealth v. Fordham, 417 Mass. 10, 18 (1994) (repeating emphasis in original), quoting Davis v. Alaska, 415 U.S. 308, 315-316 (1974) (same), quoting in turn 5 J. Wigmore, Evidence § 1395, at 123 (3d ed. 1940). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." Commonwealth v. Funches, 379 Mass. 283, 292 (1979), quoting Davis, supra at 316.
            That is why the rights of confrontation guaranteed under the United States and Massachusetts Constitutions require that reliability of testimony against a criminal defendant must "be assessed in a particular manner: by testing in the crucible of cross-examination." Commonwealth v. Jones, 472 Mass. 707, 718 (2015, quoting Crawford v. Washington, 541 U.S. 36, 61 (2004) (Sixth Amendment); accord Commonwealth v. AdonSoto, 475 Mass. 497, 504 (2016) (art. 12).
            Consistent with these principles, allowing a prosecution witness to testify during a criminal trial by two-way video conference or two-way closed-circuit television does not violate the defendant's right to confront the witnesses against them where doing so is necessary to protect the health or well-being of the witness or someone else, and the defendant is able to cross-examine and confront the witness through the video platform. See Lipsitz v. State, 442 P.3d 138, 144 (Nev. 2019) (victim residing at out-of-state drug treatment facility); White v. State, 116 A.3d 520, 540-547 (Md. Ct. Spec. App. 2015) (retired forensic serologist with serious back pain caused by prior vertebrae-fusion surgery); State v. Seelig, 738 S.E.2d 427, 434-435 (N.C. Ct. App. 2013) (out-of-state expert witness who suffered panic attacks from flying); New York v. Wrotten, 923 N.E.2d 1099, 1100-1103 (N.Y. 2009) (85-year old with coronary disease); Bush v. State, 193 P.3d 203, 214-216 (Wyo. 2008) (witness suffering from congestive heart failure, cardiomyopathy, and renal failure); Horn v. Quarterman, 508 F.3d 306, 313-318 (5th Cir. 2007) (terminally ill witness); Stevens v, State, 234 S.W.3d 748 (Tex. Ct. App. 2007) (75-year old witness with significant heart disease); United States v. Gigante, 166 F.3d 75, 79-81 (2d Cir. 1999) (fatally ill witness); State v. Sewell, 595 N.W.2d 207, 212-213 (Minn. Ct. App. 1999) (witness recovering from surgery on broken neck, at risk of paralysis from travel).
                                                            -3-
            1.2. Due Process. The requirements of procedural due process are more adaptable than the guarantee of a right to confront adverse witnesses. "Unlike the confrontation clause, due process demands that evidence be reliable in substance, not that its reliability be evaluated in a particular manner. That the focus on reliability may not accommodate a simple, predictable, bright-line rule does not alter the fact that reliability, not cross-examination, is the due process touchstone." Commonwealth v. Camblin, 471 Mass. 639, 648-649 (2015), quoting Commonwealth v. Given, 441 Mass. 741, 747 n.9 (2004).
            "Due process 'is a flexible concept ... [that] depend[s] on the circumstances of each case' " (bracketed material in original). Commonwealth v. Preston P., 483 Mass. 759, 767 (2020), quoting Commonwealth v. Durling, 407 Mass. 108, 113— 114 (1990). To determine what procedures are sufficient in a given case, a court must balance "the private interests affected, the risk of erroneous deprivation, the probable value of additional or substitute safeguards, and the governmental interests involved." Preston P., supra, quoting Noe, SORB No. 5340 v. Sex Offender Registry Bd., 480 Mass. 195, 202 (2018).
            Proceedings that directly affect someone's liberty interest or that involve a critical stage of a criminal prosecution may be conducted by video conference without violating due process, so long as the respondent or defendant has a reasonable opportunity to be heard and to challenge adverse evidence. See, e.g., Doe, SORB No. 234076 v. Sex Offender Registry Bd., 484 Mass. 666, 674-675 (2020) (sex offender classification proceeding); Shellman v. Commonwealth, 733 S.E.2d 242, 249 (Va. 2012) (annual review hearing under Virginia's Sexually Violent Predator Act); United States v. Moruzin, 2007 WL 2914903, at *4—*7 (D.N.J. 2007) (involuntary administration of antipsychotic medication to attempt to restore mental competence to stand trial); People v. Lindsey, 772 N.E.2d 1268, 1277-1278 (Ill. 2002) (arraignment and jury waiver); Larose v. Superintendent, Hillsborough County Correction Admin., 702 A.2d 326, 329-330 (N.H. 1997) (arraignments and bail hearings); United States v. Baker, 45 F.3d 837, 843-847 (4th Cir. 1995) (involuntary commitment of inmate to prison psychiatric facility).
            1.3. Public Access. A criminal defendant's Sixth Amendment right to a public trial applies here, because it applies to pretrial hearings on motions to suppress evidence. See Waller v. Georgia, 467 U.S. 39, 47-48 (1984); Commonwealth v. Jones, 472 Mass. 707, 724 (2015).
                                                            -4-
            "Even where the public trial right attaches to a given proceeding, however, the right is 'not absolute.' " Jones, supra at 723, quoting Globe Newspaper Co. v. Superior Court for the County of Norfolk, 457 U.S. 596, 606 (1982).
            The public may be denied access to court proceedings where (1) doing so is necessary to avoid prejudice to some "overriding interest," (2) the closure is "no broader than necessary to protect that interest," (3) the trial court has considered reasonable alternatives, and (4) the court makes findings adequate to support the closure. Id., quoting Waller, 467 U.S. at 48.
            2. Findings and Conclusions. The Court makes the following findings of fact and reaches the following conclusions of law.
            2.1. Risks of Contracting COVID-19. There remains a public health emergency in Massachusetts due to the continuing spread of a novel coronavirus[1] and the often deadly disease it causes that is known as COVID-19. See Foster v. Commissioner of Correction, 484 Mass. 698, 702 (June 2, 2020). Though some people who contract the virus never get sick or have only mild symptoms, many others have suffered serious illness or even died from this disease. Id.
            "[C]onfined, enclosed environments," including courtrooms, "increase transmissibility" of this virus. Committee for Public Counsel Services v. Chief Justice of the Trial Court, 484 Mass. 431, 436 (2020). Recent findings by the Jury Management Advisory Committee regarding the modes of exposure to this coronavirus and risks of contracting COVID-19 are relevant here. The Court credits and adopts the following findings of the JMAC.[2]
            o          People may be exposed to this coronavirus if they come into contact with (1) larger droplets emitted by someone who has the virus and is coughing, sneezing, or just talking, (2) clouds of small droplets in aerosol form emitted by such a person in the same way, or (3) a surface on which such droplets or aerosols land.
---------------------------
[1] The official name of this virus is the "severe acute respiratory syndrome coronavirus 2," known for short as SARS-CoV-2.
[2] See Jury Management Advisory Committee, "Report and Recommendations to the Justices of the Supreme Judicial court on the Resumption of Jury Trials in the Context of the COVID-19 Pandemic," Submitted July 31, 2020, at 12-15 ("JMAC Report"). This report is available at https://www.mass.gov/doc/jury-management-advisory-committee-jmac-report-and-recommendations-to-the-justices-of-the/download.
                                                            - 5 -
            o          "Intensity, frequency, and duration of exposure all affect the risk of infection."[3] In other words, the risk of infection increases if someone is exposed to greater amounts of the virus, is exposed to the virus more frequently, or is exposed to the virus over a longer period of time.
            o          The risk of contracting the coronavirus can be substantially mitigated by universal wearing of facemasks, staying at least six feet away from anyone who is not a member of one's own household, frequent and effective handwashing, and disinfecting high contact surfaces.
            o          When wearing a mask is inconsistent with an individual's function, such as a witness while testifying, using plexiglass barriers (or, alternatively, acrylic face shields) does an acceptable job of controlling droplets, but they are "less effective than masks in controlling the spread of aerosols."[4]
            o          "If mask wearing inhibits the proceeding, for example mask-wearing by a witness hides important facial expressions, additional controls are warranted, including: face shield or plexiglass, increased physical distancing, [and] portable air purifier with HEPA filter in close proximity" to the witness.[5]
            These last two points bear emphasis. Being present where a witness testifies at length without a mask will increase one's risk of contracting COVID-19, with its attendant risk of serious illness or even death. Even where the witness testifies from behind plexiglass barriers and is quite far from others in the courtroom, by talking at length a witness will produce aerosols of small droplets that may drift about the courtroom, and if the witness has the coronavirus that will increase the risk of exposure and disease to others.
            Anyone who is required to attend a court hearing faces risk of exposure to the coronavirus not only while they are in the courtroom, but also while they are travelling to and from the court proceeding.
            2.2. Conducting the Hearing by Video Conference. The Court anticipates that the suppression hearing scheduled in this case will take some time. Given the issues apparently raised by the motion, direct and cross-examination of the Commonwealth's witness or witnesses is likely to take at least an hour, maybe
---------------------------
[3]Id. at 13.
[4] Id. at 14.
[5] Id. at 14 n.16.
                                                            - 6 -
longer. For that examination to be effective, the witnesses must testify without wearing a mask. In addition, the Court will need to address preliminary matters with the parties and hear closing arguments.
            Conducting such an evidentiary suppression hearing with everyone physically present in the same room would create very real risks that the defendant, lawyers, witnesses, court staff, and judge may be exposed to the novel coronavirus and as a result contract COVID-19. There seems to be little chance that these risks will have materially diminished by late October, if the Court were to grant Mr. Masa's request to put off his hearing until then.
            These added risks can be avoided, completely, if the hearing is instead conducted remotely using the Zoom video conferencing platform that is available for use in Massachusetts trial courts.[6]
            The risk calculus of conducting such an evidentiary hearing with all participants together in a courtroom is very different than the similar calculus regarding how courts may safely resume jury trials.
            At present, there does not appear to be any reasonable way to empanel a jury, conduct a jury trial, and allow a jury to deliberate without gathering the jurors and parties together in one place. Given that fact and the critical role that juries play in our system of justice, the court system must aim "to reduce the risk" of exposure to the coronavirus during a jury trial "to a level that is acceptable in light of the importance of the jury trial function."[7] With respect to jury trials, that risk cannot be reduced to zero.
            In contrast, in a motion to suppress hearing only one person, the judge, must decide who and what to believe and find the facts. It is therefore quite feasible to conduct an entire evidentiary suppression hearing by video conference, and thereby completely eliminate the risk of exposing participants to the virus.
            The Court has now conducted many hearings by Zoom, and recently conducted a very effective evidentiary suppression hearing in that format. The primary disadvantage of conducting a hearing by Zoom is that there is a slight time lag between when a person speaks and the other participants can hear
---------------------------
[6] The Court notes that an attorney's ethical obligation to provide competent representation to a client includes an obligation to "keep abreast of changes in the law and its practice," including all "relevant technology." See Mass. R. Prof. Conduct 1.1, comment 8.
[7]JMAC Report at 12.
                                                            - 7 -
them. That can sometimes slow down interactions, including the examination of witnesses. But that is a minor inconvenience, not a bar to the confrontation of witnesses or the presentation of evidence.
            Under present circumstances, conducting an evidentiary hearing by Zoom has very real advantages over doing so in a courtroom. Most importantly, the risk of contracting the coronavirus from each other or while travelling to or from court is eliminated. Furthermore, in the Court's experience it is somewhat easier for the judge and parties to see and hear witnesses who testify by video and are sitting near the camera on a computer or other device, compared to the same witness testifying from far away in a courtroom. And since everyone is participating remotely, no one needs to be masked during the hearing. (The Court understands that Mr. Masa is no longer in custody, having been released on bail. In the Court's experience to date, however, detainees in houses of correction have been allowed by the sheriff's department to remove their mask during a hearing.)
            In the recent Zoom evidentiary hearing before this Court, which concerned an identification during a photo array, the defendant was able effectively to confront the Commonwealth's witness. By keeping the Zoom displays on everyone's device on the "gallery" view, the defendant and witness were able to see and face each other, albeit through the video conference link. And defense counsel was able to cross-examine the witness as effectively as if we had all been together in a courtroom.
            So long as all exhibits are put in electronic form, they can be shown to a witness and everyone else using the "share screen" function in Zoom. As a result the judge and defendant get a much better chance to see exhibits during the hearing than is typically possible when a hearing is conducted in a courtroom, even if exhibits are displayed electronically. This worked very well in the recent evidentiary hearing before the Court.
            Zoom also facilitates securely private discussions between a criminal defendant and their lawyer, using the "breakout room" function of the software.
            The Court will set and enforce ground rules consistent with the practices described above to ensure that Mr. Masa is able to confront the witnesses against him through the video conference platform.
            2.3. Public Access. The Court has successfully provided public access to hearings conducted by Zoom to anyone who wishes to observe and listen to
                                                            - 8 -
the proceedings. Providing such public access is as simple as sharing, and authorizing the parties to share, the Zoom link for the proceeding with all others who wish to observe. The Court directs non-participants to keep their devices on mute and turn off their video feed so that they do not accidently interrupt the proceedings. But the non-participants are able to see and hear everything that takes place during the Zoom hearing.
            Compared to coming to a courthouse, observing a hearing conducted by Zoom is harder for some members of the public and easier for others.
            To observe a hearing on the Zoom platform, a person must have or borrow a smartphone, tablet, computer or similar device as well as broadband Internet access. The Court recognizes that such resources are not available to everyone.
            On the other hand, when a trial or hearing is held in an open physical courtroom, anyone wishing to attend must be able to get to the courthouse. Not everyone who wants to observe a court proceeding is able to travel to a courthouse to do so.
            2.4. Ultimate Findings and Conclusions. The Court finds that denying Mr. Masa his right to a physical, face-to-face confrontation of the witnesses against him during the suppression hearing is necessary to further the important public policy of protecting public health and individual safety and well-being by eliminating avoidable potential exposure to the coronavirus that causes COVID-19. The Court further finds that its ability to make credibility determinations, and otherwise ensure the reliability of testimony presented at this hearing, can be assured by conducting the hearing remotely using the Zoom video conference platform. And the Court therefore finds that doing so will not violate Mr. Masa's right to confront the witnesses against him.
            The Court similarly concludes that conducting this hearing remotely in this manner will not violate Mr. Masa's due process rights. The private interest affected is Masa's ability to have the Court suppress evidence that by law the Commonwealth should not be allowed to present at trial. This is a very important interest. The Court finds, however, that there is very little risk that Masa will erroneously be deprived of his right to have evidence excluded as a result of the hearing being conducted remotely, and that conducting the hearing in person would have little value in ensuring that the Court only credits reliable and believable testimony. The governmental and public interest in preventing unnecessary risks of exposure to the novel coronavirus and very
                                                            - 9 -
strong. Conducting the hearing by video conference will further that interest without unfairly prejudicing Mr. Masa.
            Finally, the Court concludes that conducting this hearing by Zoom video conference will not violate Mr. Masa's right to a public hearing or the public's right to attend and observe. The proceeding will be open to the public; no one will be barred from observing it.
            To the extent that holding this evidentiary hearing by video conference limits the public's ability to observe the proceedings, the Court finds that (1) doing so is necessary to avoid prejudice to all participants' overriding interest in avoiding unnecessary possible exposure to the novel coronavirus, (2) requiring the public to observe the proceedings via Zoom rather than in person is no broader than necessary to protect that interest, (3) the Court has considered the alternative of conducting the proceeding in person in a courtroom, and (4) the other findings the Court has made in this decision are adequate to support limiting public access in this manner.
ORDERS
            Defendant's objection to conducting the upcoming evidentiary suppression hearing using the Zoom video conference platform is overruled. The hearing will proceed using the Zoom platform as previously scheduled.
            To the extent possible, the parties shall provide electronic copies of all exhibits that they plan to offer or may use in advance to the session clerk and to the opposing party. If Defendant does not wish to reveal a potential exhibit in advance he need not do so. In any case, the parties shall have access to all potential exhibits in electronic form and be prepared to display them using the "share screen" function of Zoom so that everyone may see the exhibit. The parties must ensure that, within three business days after the hearing, the session clerk has a tangible copy of any item marked as an exhibit.
            During the hearing, all witnesses shall keep their Zoom displays in the "gallery" mode so that Defendant may see and face the witnesses, and they may see and must face him. If at any time Defendant and defense counsel need to confer privately, they may do so using the "breakout room" function.
/s/Kenneth W. Salinger Justice of the Superior Court
August 10, 2020
                                                            -10-
xxz